[Civ. No. 31910. Second Dist.; Div. Five. Jan. 30, 1968.]

IRVING LANGER, Petitioner, v. WORKMEN'S COMPEN-
SATION APPEALS BOARD, GILBERT & DOLAN
ENTERPRISES, INC., et al., Respondents.

Raymond Gloozman for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Clopton & Penny
and Robert A. Kegel for Respondents.

McCOY, J. pro tem.*—Petitioner seeks review and annul-
ment of an award of the Workmen's Compensation Appeals
Board assessing a penalty, pursuant to Labor Code, section
5814, against the insurance carrier for unreasonable delay in
the payment of compensation. Petitioner, the applicant, con-
tends that the board has not computed the penalty as required
by the statute.

The statute provides: ''When payment of compensation has
been unreasonably delayed or refused, either prior to or sub-
sequent to the issuance of an award, the full amount of the
order, decision or award shall be increased by 10 percent. The
question of delay and the reasonableness of the cause therefor
shall be determined by the appeals board in accordance with
the facts. Such delay or refusal shall constitute good cause
under Section 5803 to rescind, alter or amend the order, deci-

---

*Retired judge of the superior court sitting under assignment by the
Chairman of the Judicial Council.

sion or award for the purpose of making the increase provided for herein.''

The board found that the carrier unreasonably delayed payment of compensation benefits awarded in an ''Order Denying Petition to Terminate and Supplemental Findings and Award,'' dated September 29, 1966; that applicant was entitled to the sum of $7 per week beginning November 9, 1966,[1] and continuing thereafter during the continuance of his disability until the further order of the board as a penalty on temporary disability indemnity; and that he was entitled to the sum of $57.92 as a penalty on reimbursement for self-procured medical treatment. The award is in accordance therewith.

It is the applicant's contention that the statute clearly calls for the imposition of a penalty of 10 percent of the full amount of the award of $70 per week commencing October 13, 1964, and not from November 9, 1966. We agree.

Applicant, a carpenter, born 1911, sustained industrial injury to his back on October 12, 1964. Upon his application the referee issued his findings and an award on March 3, 1965. He found that the injury caused continuing temporary total disability beginning October 13, 1964, to and including January 12, 1965 (the date of the hearing) and thereafter, payable at $70 per week and that defendants failed to furnish medical treatment after notice of need and medical costs of the reasonable value of $698.50 were necessarily incurred by the petitioner. The award was for these benefits together with certain medical-legal costs.

Defendants on July 21, 1965, filed a notice of cessation of payments and petition for termination of liability. They alleged that weekly compensation had been paid through July 13, 1965.

Following the filing of the petition for termination of liability there were several hearings but no further award was made for well over a year. On September 29, 1966, the referee found that petitioner's temporary total disability was still continuing and the award of $70 per week beginning October 13, 1964, was continued in force until further order. Among other things defendants were ordered to pay $50 to a Doctor Glass, $150 to a Doctor Thompson and the sum of $41.70 to petitioner as reimbursement for self-procured medical treatment.

---

[1]November 9, 1966, is the date on which the board denied reconsideration of the referee's order and award of September 29, 1966.

It appears that between July 13, 1965, when defendants had stopped paying petitioner the sum of $70 per week and the referee's order of September 29, 1966, defendants had made certain payments to petitioner in the sum of $52.50 per week. The record is fairly obscure on the point but as near as we can gather these payments were not made for a considerable number of weeks.

Reconsideration of the order of September 29, 1966, was denied on November 9, 1966.

On December 5, 1966, petitioner requested penalties under section 5814. The matter came on for hearing on February 15, 1967. At that hearing it appeared without contradiction that in January 1967 after the penalty proceedings were started defendants paid petitioner the sum of $1,820, but even then defendants' total payments were $2,000 short of what they should have paid under the original award and the award of September 29, 1966. They had not paid petitioner the $41.70 for self-procured medical treatment, nor had they paid Drs. Glass and Thompson. Defendants made no attempt to excuse the delinquencies.

After the hearing the referee made an award imposing a penalty of 10 percent on all payments for temporary total disability starting October 13, 1964, and on all reimbursement for self-procured medical treatment.

On reconsideration, the board on May 15, 1967, accepted the referee's findings concerning the unreasonable delay of the payment of compensation benefits, but modified the award by providing that the 10 percent penalty on the temporary disability indemnity was not to start until November 9, 1966.

Labor Code, section 5814 was enacted in 1945. Prior to that time section 5811 provided that the commission could, in its discretion, allow interest at a rate not to exceed 1½ percent per month on unreasonably delayed payments of compensation "during such period of delay." There was no provision for interest on an award when there was unreasonable delay or refusal of payment. (*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 202 Cal. 521 [261 P. 987].) In 1945 section 5800 was added to provide that interest shall run at the same rate as judgments in civil actions on all sums payable forthwith and on other sums as they become due and payable under an award. The interest provision in section 5811 was deleted at that time and the penalty for unreasonable delay was treated in section 5814.

Only a few cases have had occasion to consider the statute.

In *Hockett* v. *Industrial Acc. Com.*, 170 Cal.App.2d 155 [338 P.2d 604], the applicant was disabled for 22 weeks and incurred $1,141.43 medical and hospital expenses and $95 for medical-legal expenses in proving his claim. The defendants paid no benefits whatever. Upon a finding that the payment of compensation had been unreasonably delayed and refused, the commission, as a penalty, increased the award of weekly temporary disability compensation by 10 percent, that is, from $50 to $55 per week. It denied an increase of 10 percent in the amount awarded for reimbursement for medical and hospital expenses and the amount for medical-legal costs. It also refused to increase the amount ordered paid to satisfy the lien of an unemployment compensation insurance carrier. On review the court concluded that the commission was in error in denying a 10 percent increase on the amount incurred for medical care and hospital treatment but was correct in denying the increase on medical-legal costs which are in the nature of costs rather than compensation and on the amount of the lien since that amount had been included in the 10 percent increase on weekly indemnity benefits. It said (pp. 157-158) : ''Section 5814 of the Labor Code is not ambiguous and expressly provides that 'When payment of compensation has been unreasonably delayed or refused, . . . *the full amount of the . . . award shall* be increased by 10 per cent.' (Emphasis added.) The award referred to is the award of compensation. 'Compensation' includes every benefit or payment conferred upon an injured employee by division IV of the Labor Code (Lab. Code, § 3207). Medical, surgical and hospital treatment reasonably required to cure or relieve from the effects of injury were benefits so conferred (Lab. Code, § 4600) and reimbursement for the amount reasonably incurred for such care is compensation under the statute. [Citations].''

In *Davison* v. *Industrial Acc. Com.*, 241 Cal.App.2d 15 [50 Cal.Rptr. 76], an award had issued to the applicant upon her application for adjustment of claim after receipt of some temporary disability compensation and medical treatment. The award was for continuing weekly disability benefits and medical treatment. It allowed credit to the insurer for sums previously paid. Subsequently the insurer petitioned to terminate benefits and, as in the present case, the petition to terminate was denied and a supplemental award issued for continuing benefits and medical treatment as well as reimbursement for certain self-procured medical treatment. Upon

the subsequent delay of the insurer in furnishing medical treatment (although it made weekly disability payments) the applicant requested the imposition of the penalty provided by section 5814. After a hearing supplemental decision issued imposing the penalty by way of a 10 percent increase on everything but medical-legal costs. Thereafter the applicant requested that a second penalty be imposed for an alleged subsequent unreasonable delay in medical treatment. The commission refused to take any evidence on the issue on the ground that under the statute only one 10 percent penalty could be imposed. The court remanded to the appeals board with directions to hear and determine whether the facts justified a second penalty.

In the *Davison* case the respondents, as the respondents here, argued that a penalty statute must be strictly interpreted against the parties seeking to impose it. The court noted that this argument asked it to ignore the specific direction in Labor Code, section 3202 that the provisions of the Workmen' Compensation Act be liberally construed for the protection of persons injured in the course of their employment. The court reasoned (p. 18) that the penalty "is designed to help an employee obtain promptly the cure or relief he is entitled to under the law, and to compel his employer to provide this cure or relief in timely fashion." It concluded by holding that successive delays in the payment of compensation may give rise to the imposition of successive penalties which would give the section its intended deterrent effect and carry out the policy of liberal construction.

The other cases which considered the statute were concerned only with the question of whether delay or refusal of benefits was unreasonable. (*Argonaut Ins. Co.* v. *Industrial Acc. Com.*, 210 Cal.App.2d 267 [26 Cal.Rptr. 470]; *Reynolds Electrical & Engineering Co.* v. *Workmen's Comp. Appeals Board*, 65 Cal.2d 438, 445 [55 Cal.Rptr. 254, 421 P.2d 102].)

As illustrated in the first penalty imposed in the *Davison* case, it appears that for some years the board has been imposing the penalty on the full amount of an award, including payments made previously by the employer. (*Christman* v. *Kaiser-Walsh-Perini-Raymond* (1959) 24 Cal. Comp. Cases N.S. 282.) It has also been held that the 10 percent penalty applies prospectively to benefits payable in the future under a continuing award. (*Guarantee Ins. Co.* v. *Industrial Acc.*

*Com.*, (*Stokes*) 21 Cal. Comp. Cases N.S. 279; *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, (*Summers*) 23 Cal. Comp. Cases N.S. 19; *Rosenthal* v. *Industrial Acc. Com.*, (*Williams*) 27 Cal. Comp. Cases N.S. 44, all cases in which petition for writ of review was denied.) The following comment appears in California Workmen's Compensation Practice (Cont. Ed. Bar) at page 521: "The penalty must be applied to the full amount of the award and it is error for the Commission to determine otherwise in view of the express wording of Lab C. § 5814. *Pacific Hawaiian Products Co.* v. *Industrial Acc. Com.* [Campbell] (1961) 26 C.C.C. [N.S.] 68 (petition for writ of review denied March 28, 1961)."

The defendants argue that the appeals board can "award" only those matters which have not been agreed to by the parties and which have not been voluntarily assumed and paid by the defendants, that an award is a decision following a dispute or issue and where there was no dispute or issue between the parties there can be no award and if benefits have been voluntarily paid, then there can be no award of those benefits.

Defendants' argument is entirely in the abstract. They did not make any payments voluntarily.[2] This case therefore does not involve the question whether the penalty of section 5814 should extend to voluntary payments made before the employee files an application for compensation, nor even to the question whether the penalty extends to truly voluntary payments made after an application for compensation is filed, but before an award issues. Much can be said for the proposition that the penalty should not apply to such payments, but

---

[2]The transcript of the very first hearing on January 2, 1965, contains the following statement of the referee: "The following facts are admitted: Irving Langer, born January 2, 1911, was employed as a carpenter on October 12, 1964, at Santa Monica, California, by Gilbert and Dolan Enterprises, Inc., a corporation, whose workmen's compensation insurance carrier on said date was Reliance Insurance Company, a corporation. Earnings maximum. No medical treatment furnished. No compensation paid. No attorney's fee paid or arrangement made. Issues: 1. Injury arising out of and occuring in the course of the employment; 2. Need for further medical treatment; 3. Liability for self-procured medical treatment; 4. Medical-legal costs; 5. Nature, extent and duration of the disability; 6. Lien claim of Department of Employment; 7. Lien claim of Leonard J. Yamshon, M. D.; 8. Lien claim of Westside Hospital; 9. Lien claim of S. Sanford Kornblum, M. D.; and 10. Ten percent penalty for unreasonable failure to furnish compensation benefits. Are the admitted facts and issues correctly framed, gentlemen: MR. GLOOZMAN: So stipulated, Your Honor. MR. WILLS: With the additional issue of apportionment, so stipulated."

defendants are in no position to urge the point.[3] They fought petitioner tooth and claw all the way.

Section 5814 of the Labor Code is no model of legislative draftsmanship. Many problems are buried in its language when the realities of workmen's compensation litigation are considered. ■ This case is no vehicle to solve any of them except the one at hand, that is, whether the board was correct in imposing penalties only on payments becoming due after November 9, 1966.

It should be pointed out that that date is entirely fortuitous. It happens to be the day on which the board denied reconsideration to defendants with respect to the referee's order of September 29, 1966, denying termination, restating the award for the past period of almost two years, providing for continued payments and awarding certain payments for medical reimbursement. Because of delay it had taken more than 15 months after the filing of the petition for termination of liability for the matter to be decided. In the meanwhile defendants had not paid petitioner for many weeks and had paid him at the rate of $52.50 per week for the remainder of the time.[4] Indeed it appears by our rough arithmetic that the payment of $1,820 made in January 1967 was calculated to pay petitioner at the rate of $52.50 per week from July 1965 forward. This was two months after defendants had been ordered to pay at the rate of $70 per week.

It thus appears that the order of November 9, 1966, made very little impression on defendants. It was only after petitioner asked for penalties on December 5, 1966, that, one month later, defendants partially complied. The date of November 9, 1966, has no significance whatsoever.

We hold that where, as here, all prior payments of compensation have been made under the compulsion of an award, the

---

[3]It is obviously an incentive to the making of voluntary payments that any future penalty will not extend to them. It appears to be the practice of the board to date awards from the date of injury, although board intervention is not sought until long after payments have been made on a purely voluntary basis. This seems to be merely an administrative convenience. It would do little violence to section 5814 to hold that payments voluntarily made are not part of a later award, even though the order making the award purports to cover the period during which such payments are made and to give credit therefor. But, as we say, that point is not before us.

[4]The sum of $52.50 per week is the maximum weekly payment for total permanent disability. (Lab. Code, §§ 4460, 4658.)

10 percent penalty should be imposed, just as section 5814 says, on "the full amount of the order, decision or award."

The award is annulled with directions to the board to take further proceedings with respect to the imposition of penalties on defendants in accordance with the views expressed in this opinion.

Kaus, P. J., and Hufstedler, J., concurred.