[Civ. No. 33605.   Second Dist., Div. Five.   June 10, 1969.]

OSCAR FLOYD KAUFFMAN, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, WINSTON BROTHERS COMPANY et al., Respondents.

Schwartz & Bennett and Eugene M. Schwartz for Petitioner.

Everett A. Corten, Nathan Mudge, Herlihy, Herlihy, Jones & Nelson and F. George Herlihy for Respondents.

AISO, J.—An employee seeks review and annulment of a supplemental order made by the Workmen's Compensation Appeals Board upon his petition for the enforcement of an award for "lifelong rest home care" and for the imposition of penalty under Labor Code, section 5814 for unreasonable delay in complying with the award.

Petitioner, Oscar Floyd Kauffman, born March 2, 1914, sustained industrial injury on October 17, 1958, when crushed by an earth mover in the course of his employment as a heavy equipment operator. As a result his left leg was amputated at the hip. On November 2, 1961, the Industrial Accident Commission, the predecessor of the appeals board, affirmed a referee's findings and award of compensation against respondent insurance carrier for permanent disability rated at 100 percent and for "lifetime medical treatment in the form of such medications, prosthesis, wheel chair, crutches, and repair and replacement of same, travel expense in connection therewith, and otherwise as may be necessary to relieve from the effects of said injury."

On March 28, 1962, the referee issued a supplemental order adding to the award a provision for "lifelong rest home care where meals are provided and bedding taken care of, and where such other help is provided the applicant as may be necessary by reason of his injury, or its equivalent by arrangement directly with and satisfactory to the applicant. . . ." This order was based on evidence that petitioner was unable to use a prosthetic device, and a withered arm and shoulder made the use of crutches painful and hazardous. After he had left the hospital on January 16, 1959, he had stayed with a sister and niece tho took care of him. Between November of 1959 and November of 1961 he had lived in a trailer, which he had occupied before the injury. On the latter date he moved into the home of some friends. He was unable without assistance to bathe, to prepare his meals, to clean his quarters and bedding. Pain in the stump and sympathetic pain in the other extremity required that he take large amounts of drugs, including narcotics, which required supervision. In January 1962, applicant asked for a hearing on the medical treatment issue; a hearing was held resulting in the referee's supplemental order of March 28, 1962.

By letter dated June 14, 1962, the respondent insurance carrier petitioned to have the award amended to delete the provision for rest home care on the basis of a doctor's report that petitioner's condition at that time did not require care in

a "nursing" home. The matter was subsequently taken off calendar on August 16, 1962, at the request of counsel for the parties for further time to work out an amicable settlement. On June 10, 1963, petitioner's counsel requested that the case be set for hearing "on the issue of enforcement of the award." On August 26, 1963, the referee requested briefs on the issue of the "reasonableness of refusal to use proffered rest homes" and reset the matter for hearing. On December 3, 1963, the matter was continued with the understanding that the parties would negotiate for possible settlement of all issues relating to the medical care of the petitioner. On February 27, 1964, the matter was taken off calendar, subject to being reset upon the request of any party, because the petitioner was in the hospital.

On February 28, 1964, petitioner was admitted to the Brentwood Convalescent Hospital and Sanitarium on the recommendation of Dr. Glasser, a psychiatrist furnished by the insurer. On April 8, 1964, the doctor advised the sanitarium to place the petitioner in a private room. His report indicated that sharing a room with an elderly sick patient was damaging petitioner's rehabilitation. Petitioner was again hospitalized on May 18 to June 20, 1964, for orthopedic surgery after which he returned to the sanitarium for a month. He lived in an apartment between July 20, 1964, and September 13, 1964. On the latter date he was readmitted to the sanitarium by Dr. Glasser and has remained at that facility.

It appears that on June 12, 1964, while hospitalized, petitioner wrote to the presiding commissioner asking for an interview and advising that he was being discharged from the hospital and he had no place to go where he could get assistance. The commissioner directed the referee to investigate. The referee went to see the petitioner who was temporarily staying at a motel after his discharge from the hospital. The referee served a report of his investigation on the parties and set the case for hearing on the adequacy of the medical treatment, the imposition of penalty, and collateral issues relating to reimbursement of certain expenses. The referee was subsequently removed from the case, apparently upon the ex parte request of the insurer. On August 14, 1964, a second referee disqualified himself upon petitioner's objection to the matter being heard by a different referee.

On October 16, 1964, the matter came on for hearing before a third referee who ordered that the matter be dismissed upon stipulation by and between the parties: (1) that "all issues

raised herein at the hearing of August 14, 1964, be withdrawn with prejudice on the motion of the applicant [petitioner]"; (2) that respondents would pay for and continue to furnish care and treatment at the Brentwood facility "until medical advice indicates to the contrary"; and (3) that petitioner expressed his satisfaction to remaining there at that time. A reference to the issues noted at the hearing of August 14, 1964, reflects that they included reimbursement for various living and nursing expenses, supplemental medical care, and penalty under Labor Code, section 5814.

The record reflects at the insistence of the insurance carrier, petitioner visited at various times before 1965 some facilities described as "rest homes" but he refused to move to any of them because they were occupied by old people, were illsmelling or unclean.

In 1965 and 1966 Dr. Glasser saw petitioner from time to time. In his reports to the insurer he indicated that petitioner did not need actual "hospital" care and might become more self-sufficient if he had some other place of residence with someone to assist him. However, the doctor indicated that he knew of no one who would provide the assistance petitioner required. On April 26, 1966, the insurance carrier advised petitioner by letter that he was no longer in need of convalescent care and that it would pay $250 per month to cover the estimated cost of room and board at a rooming-house type of facility. From July 1, 1966, to February 20, 1967, the carrier issued checks of $250 per month to petitioner and refused to pay the Brentwood facility.

On August 12, 1966, petitoner advised the board that the respondents had refused to comply with the award and requested a hearing and the imposition of penalty. Hearings were held on February 20, 1967, June 5, 1967, and December 11, 1967. In the meantime the insurer agreed to pay the sanitarium in full through July 16, 1967. Thereafter, it paid the sanitarium the price of a double room charge but refused to pay the amount billed for a single room which the applicant had occupied. On February 26, 1968, the referee issued a supplemental award which provided for lifetime rest home care consisting of private clean quarters and professional control of the dispensation of medication or equivalent arrangements satisfactory to petitioner. The award also provided for the imposition of a 10 percent penalty on all benefits awarded based on a finding that the insurer had unreasonably delayed the furnishing of medical treatment.

The appeals board granted the respondents' petition for reconsideration, set aside the award of the referee, and found: (1) respondents did not unreasonably delay; (2) respondents failed to furnish medical treatment as awarded and petitioner was entitled to reimbursement of his medical expenses including all expenses incurred at the Brentwood facility; (3) petitioner is and will be ''in need of further medical care and treatment to cure and relieve from the effects of injury.''

In its decision it specified its reasons and set forth the evidence relied upon, as provided by Labor Code, section 5908.5. Its reasoning was that the supplemental award of March 28, 1962, and the order dismissing the applicant's petition for determination of issues on October 16, 1964, pursuant to stipulation were orders relating to the enforcement of the initial general award of lifetime medical care; that in enforcement proceedings the board's function is to determine whether or not the award has been carried out; that the board ''cannot, or at least should not, specifically prescribe what particular medical care and treatment a defendant must furnish in the future''; and where there has been a finding that reasonable care and treatment include a specific type of treatment it may be presumed that the need for the treatment continues to exist until it is shown that there has been a material change in the employee's condition which justifies a change in treatment.

The board concluded that petitioner's condition had not changed materially since the orders of March 28, 1962, and October 16, 1964. It rejected the opinions expressed by Dr. Glasser to the effect that applicant should be deprived of rest home care in order that he be forced to become more self-sufficient. It relied upon the testimony of Dr. Abraham and Dr. Gucker and the reports of Dr. Scandalis to the effect that petitioner ''has been and continues to be in need of the facilities of an institution such as Brentwood. . . .'' It did not identify the specific facilities. A reference to the medical reports indicates that these doctors agreed that petitioner required the services of a nursing staff qualified to dispense and supervise medicine, as well as someone to prepare his meals, keep his quarters and bedding clean, and assist him in maintaining personal cleanliness and sanitation. As Dr. Scandalis observed, the ''whole procedure sounds basically like full time care for him.''

In respect to future needs, the board stated: ''Thus, as a matter of fact, we find that reasonable medical treatment for

the purpose of enforcement of this Board's earlier orders has included the care and treatment provided by the Brentwood facility. We will not prescribe in our award of future medical treatment that such specific medical care and treatment is to continue. We emphasize, however, that unless a material change in applicant's condition occurs and is established before this Board, it would likely be found in future enforcement proceedings that this specific type of treatment should have been rendered. We further are convinced that the future medical care and treatment generally provided will not include a private room and prognosticate that in future enforcement proceedings it would be so found by this Board, unless, as stated, there is some material change, this time for the worse, in applicant's condition.''

The board concluded, without reference to any evidence on the issue, that private room care was not presently required to cure or relieve from the effect of the injury although it added that such care ''may in some instances, of course, be medically reasonable, as it was for a time in this case in accordance with the report of Dr. Glasser, dated April 8, 1964.'' It further concluded that petitioner did not unreasonably incur the extra expense of a private room at the Brentwood facility ''because of the confused state of affairs produced by defendant's insistence upon applicant leaving the Brentwood facility.'' It allowed reimbursement for all of the expenses, including the private room to the ''date of the finality of this decision.''

The board concluded that the insurer's conduct was not unreasonable because it was ''acting upon reasonable medical evidence.'' It commented: ''Perhaps the better course would have been for them to have obtained a ruling from this Board respecting whether or not a material change had occurred in applicant's condition to justify a change in the treatment being provided. However, because of the serious dispute between the parties, we cannot say that defendants' delay was unreasonable.''

▇▇ Petitioner contends that the evidence as a matter of law compels the imposition of the penalty provided by Labor Code, section 5814.[1] Specifically he contends that for whatever reason, the refusal or failure to comply with express

---

[1] Labor Code, section 5814 provides: ''When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals

provisions of an award is "unreasonable" and calls for the imposition of penalty. Alternatively, he argues that even assuming that the carrier was justified in relying on the advice of Dr. Glasser, the doctor's recommendation was that he reside with someone who could assist him and not that he be left to shift for himself with a payment of $250 per month. The carrier argues that the award called for "rest home" care, not "convalescent hospital" care; that Brentwood facilities were of the latter type; that petitioner refused to leave thus preventing performance, and, as a last resort, it undertook payment to him of the cost of "rest home" care.

There are a few cases which have considered the extent of the board's discretion under Labor Code, section 5814, but discretion being a matter which rests largely upon the totality of facts and circumstances of each case, these cases are helpful only in discerning general policy considerations. In *Vogh* v. *Workmen's Comp. App. Bd.* (1968) 264 Cal.App.2d 724 [70 Cal.Rptr. 722], the court annulled a decision denying a penalty and directed the board to impose the penalty where the board found delay in payment of compensation under an award and expressly stated in its decision that the delay "seems to be inexcusable and the Appeals Board does not condone it." (p. 727.) In *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 210 Cal.App.2d 267 [26 Cal.Rptr. 470], it was held the commission "was fully justified" in assessing the penalty where the court concluded that under the rules for computing the amount of temporary disability indemnity the carrier had no reason to reduce weekly benefits.

In *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 438 [55 Cal.Rptr. 254, 421 P.2d 102], the court annulled that portion of an award which imposed the penalty. No prior award had issued and the injury having taken place in Nevada, the employer refused to furnish compensation on the ground that the claim was not within the jurisdiction of California. The court concluded (p. 446) that under the circumstances "it is unduly harsh and an abuse of the commission's discretion for it to strictly apply the provisions of section 5814." In *Janet* v. *Industrial Acc. Com.* (1965) 238 Cal.App.2d 491 [47 Cal.Rptr. 829], the employer terminated medical treatment and temporary disability indemnity about a year after injury. The applicant had re-

board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

fused recommended surgery and later refused further medical examination until after hearing of her claim for temporary disability, and other issues. She also had refused to authorize the release of certain medical records in the hands of the Veterans Administration which resulted in extensive delay before award issued and further compensation was paid. The court upheld a finding that the applicant did not unreasonably refuse the surgery because it was shown to be unnecessary. It further concluded (p. 497): "Because petitioner's unusual behavior was responsible for much of the delay, the commission was also justified in refusing to apply the penalty provisions of Labor Code section 5814."[2]

The evidence in the present record has two aspects. There is testimony which tends to show that the terms "rest home" and "convalescent hospital" are not synonymous. It indicates that the latter phrase connotes more extensive facilities and more intensive individual care and attention, including the services of a resident physician and nursing personnel qualified to dispense medicines, than are normally provided by the typical rest home. There is evidence that petitioner had in the past rejected all facilities suggested by the insurer and that he, perhaps with justification, had become extremely antagonistic and uncooperative. Dr. Glasser had informed the insurer that petitioner did not require hospital-type facilities, but only assistance in the details of routine living which he could not physically perform alone. Taken together this evidence supports an inference that an offer to provide a facility complying with the terms of the award, but providing less service than Brentwood, would have been futile and that the insurer was not acting unreasonably in seeking to have petitioner select such a facility. The fact that the insurer paid petitioner only a fraction of the cost of the Brentwood facility raises the inference that the insurer's sole motivation was to substitute the relatively meager cash sum of $250 per month as compensation, but it is not the function of the court to weigh conflicting inferences.

A further consideration is that an award for medical treatment, as the board recognizes, does not in the ordinary case specify the treatment, which is subject to change upon medi-

---

[2]Other cases dealing with section 5814 do not consider circumstances which will justify *a denial* of the penalty. (See *Langer* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 400 [65 Cal.Rptr. 598]; *Hockett* v. *Industrial Acc. Com.* (1959) 170 Cal.App.2d 155 [338 P.2d 604]; *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15 [50 Cal. Rptr. 76].)

cal recommendation. An award of specific treatment is unique and the referee's determination in this case was probably the result of litigation of whether a particular treatment is necessary. No case has been called to our attention which considers whether under such circumstances a penalty should be imposed when the treatment is changed on the basis of a subsequent medical opinion that the employee no longer requires the particular treatment without a prior hearing and amendment of the award. ▮ The rule is that where there has been an award of compensation for temporary disability the defendant may terminate compensation in reliance on a medical opinion that disability has ceased. In view of the lack of precedent, the procedures recognized in the somewhat analogous situations, and the conflicting inferences, the appeals board did not abuse its discretion in refusing to impose the penalty in this instance.

We add, however, that we do not approve the denial of a penalty for delay or refusal to comply with an award or order for specific medical treatment simply because a defendant relies on a subsequent opinion from a doctor who did not make the recommendation supporting the order for treatment. We do not agree with the board's major premise that in proceedings for the enforcement of medical awards the board's function is merely to determine whether or not the award has been performed. There is nothing in the Workmen's Compensation Act which so limits the power of the board. ▮ Under Labor Code, section 4600 the board has power to make awards for both future medical treatment and for reimbursement for treatment which an employer has failed or refused to furnish. *In an appropriate case* the board can and should specifically prescribe the medical care and treatment which must be furnished in addition to making a general award.

Labor Code, section 4604 provides that controversies between employer and employee arising under chapter 2 of division 4 of the Labor Code (§§ 4550-4855) shall be determined by the appeals board upon the request of either party. No legal impediment to the appeals board more specifically describing the medical care and treatment than it did in this case has been brought to our attention. ▮ An order enforcing an award for medical and hospital treatment is in the *ordinary case* an order for reimbursement of self-procured treatment and such an order is clearly neither a rescission, an alteration nor an amendment of the award. It was held that the power of the commission to enforce such an award is not

limited by the five-year period for rescinding, altering or amending an award. (*United States Fid. etc. Co.* v. *Department of Industrial Relations* (1929) 207 Cal. 144, 153-154 [277 P. 492].) In *Llewellyn Iron Works* v. *Industrial Acc. Com.* (1933) 129 Cal.App. 449, 453 [18 P.2d 975], the court considered whether the denial of a petition for reimbursement and to compel the employer to continue to provide nursing services under an award "until the termination of the need for said nursing services" was an order within the jurisdiction of the commission when made after the time then allowed for rescission. The court concluded that the commission acted within its jurisdiction, on the rationale that the order, being a continuing order, could be enforced beyond the time for rescission, and that the jurisdiction to enforce necessarily includes the jurisdiction to decide if it should be enforced, i.e. to determine whether the need still exists.

In *Zeeb* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 496 [62 Cal.Rptr. 753, 432 P.2d 361], the employee had received an award which included further medical treatment necessary to cure or relieve from the effects of the injury. The physician furnished by the employer subsequently refused further treatment on the ground that the later treatment was for a non-industrial condition. The applicant went to his own physician and later obtained an award for reimbursement based on a finding that the condition was connected with the original injury. The employer thereafter notified the applicant to resume treatment with the doctor furnished by the employer. The applicant refused and petitioned for enforcement of the award and a determination that he was entitled to continue with his own doctor and the employer was required to pay for it. The board denied the claim. On review the court held that the petitioner was entitled to a determination that in the absence of a substantial change in condition he could continue his treatment with his own doctor and would not lose his right to reimbursement by doing so. The court additionally commented that the employer would be liable only for the "reasonable cost."

The opinion of the board in the present case cites the *Zeeb* case and indicates that upon future consideration of adequacy of medical treatment "it would likely be found" that in the absence of a showing of changed condition reasonable medical treatment in a facility such as Brentwood continued to be necessary. In *Zeeb* (p. 502) the court reasoned that "the purposes of section 4600 [Labor Code] would dictate that a doc-

tor-patient relationship which will inspire confidence in the patient is an ingredient aiding in the success of the treatment, and that, once such a relationship has been established, treatment should continue with the same doctor in the absence of a change of condition or evidence that the treatment is defective or additional treatment is necessary.''

In the present case petitioner contends that he is entitled to an award specifying that medical treatment shall include care in a rest home providing the particular facilities for which the board found he was entitled to in the immediate past. He urges that the general order for future medical care leaves him subject to the burden of instigating continuing litigation with the risk of being denied reimbursement and adequate care. We agree.

In light of the foregoing cases and the rule that the compensation law shall be liberally construed in favor of the employee (Lab. Code, § 3202), we see no reason why the law will not permit and the board should not issue supplemental orders setting forth in detail the specific type of facility presently required by petitioner. In its opinion the board frankly states: ''There has been no material change in applicant's condition and there presently is no great hope of sudden success in this regard.'' Petitioner is entitled to a determination that in the absence of a clear showing of substantial change in his condition he may continue to have the care presently found necessary and to an order specifying rest home care and the particular services which he needs to cure or relieve him from the effects of the industrial injury.

Petitioner also contends that he is entitled to a private room. He has not called to our attention any medical evidence on the issue of whether he is in need of a private room to cure or relieve him from the effects of the injury. While it may be desirable that he should have a private room, the carrier is liable for providing it only if it is required. (Lab. Code, § 4600.) We cannot say that the evidence compels a finding to that effect.

The award is annulled insofar as it awards further medical care without specificity required by the circumstances of this case, and affirmed in all other respects. The cause is remanded to the board for further proceedings consistent with the views set forth in the foregoing opinion.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied July 1, 1969.