[No. A049648. First Dist., Div. Two. Jan. 29, 1991.]

ARMANDO CONSANI, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and SAFEWAY
STORES, INC., Respondents.

COUNSEL

Boxer, Ury & Gearheart and Mark E. Gearheart for Petitioner.

John J. Parente for Respondents

OPINION

PETERSON, J.—This case presents a question on which courts of appeal have divided in interpreting the penalty provisions of Labor Code[1] section 5814 after the Supreme Court's decision in *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815 [153 Cal.Rptr. 590, 591 P.2d 1242].

We will hold, in annulling and remanding the decision of the Workers' Compensation Appeals Board (Board), that the "entire amount" of a particular class of workers' compensation benefits, on which the 10 percent penalty provided by section 5814 is calculated, includes all nondelayed voluntary payments of such class of benefits which are made by an employer before issuance of an award.

I. FACTS AND PROCEDURAL HISTORY

Between October 23, 1985, and October 12, 1987, Armando Consani filed five workers' compensation claims for back injuries sustained while em-

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Labor Code.

ployed as an investigator for Safeway Stores. In February 1987, he underwent lumbar surgery which consisted of a two-level fusion at L4-5 and L5-S1. In November 1987, Consani's treating physician, Charles Barnes, M.D., reported that X-rays showed a solid fusion at L4-5 but not at L5-S1. Dr. Barnes's report stated: "The low back remains a problem. He is large, having gained weight, now at 240 [pounds]. [Nutri-System] would benefit this patient if authorized by the carrier."

Consani immediately went to Nutri-System, obtained a contract for a weight-loss program that cost $1,244, and hand delivered it to the claims department of Safeway with a note asking for approval. Safeway did not respond. In December 1987 and in January 1988, Consani's counsel wrote letters to Safeway demanding that it approve the weight-loss program. Safeway did not respond. In March 1988, Consani's counsel filed a petition for a 10 percent penalty for unreasonable delay in paying for the weight-loss program. The petition asked that the penalty be computed by multiplying 10 percent times the cost of "all medical treatment, past, present and future . . . ."

A hearing on the petition was scheduled for June 15, 1988, and then continued to July 19. In late June, Safeway was served with a prescription prepared by Dr. Barnes on June 20. It stated: "NUTRI-SYSTEM—FOR WEIGHT LOSS [¶] Diagnosis: Solid fusion at L4-5; delayed fusion at L5-S1 [¶] (Weight interfering with fusion)" Safeway responded by agreeing to pay for the weight-loss program.

At the hearing on the petition for a penalty assessment, Safeway argued that it had not unreasonably delayed payment for the weight-loss program. Safeway pointed out that Consani had enrolled in the Nutri-System program on a voluntary basis on previous occasions. In addition, for three years, Safeway had provided Consani with membership in a physical fitness club, namely the Diablo Athletic Club. Safeway had declined to pay for the weight-loss program because there was no evidence that such treatment was reasonable or necessary to cure or relieve the effects of this injury.

In her decision filed on August 22, 1988, the workers' compensation judge (WCJ) found that Safeway had unreasonably delayed payment for the weight-loss program. The WCJ also found that Consani was entitled to a 10 percent penalty assessed against the "full dollar value of all medical treatment provided to date . . . ." less an attorney fee of 12 percent. The next day, August 23, the WCJ amended her decision by extending the 10 percent penalty against the value of all *future* medical treatment.

Safeway filed a petition for reconsideration, which the Board granted. The Board found that Safeway "failed to seasonably and/or reasonably

provide a weight loss program for [Consani]." It modified the WCJ's decision by limiting the penalty to which Consani was entitled to 10 percent of the full dollar value of (a) his weight-reduction program, and (b) all medical expenses of any type reasonably, actually, and necessarily incurred after August 23, 1988 (the date of the WCJ's decision). A majority of the Board, thus, ruled that the penalty could not be assessed against the value of medical treatment Safeway had theretofore voluntarily paid without delay ($44,537.81) and without compulsion of an award. One Board member, in a concurring and dissenting opinion, urged that the 10 percent penalty should be limited to the cost of the weight-loss program alone. No review is sought of that portion of the Board's decision finding the employer unreasonably delayed the provision of that portion of Consani's medical treatment consisting of a weight-loss program and its assessment of penalty against future medical benefits.

Consani petitions this court for a writ of review of the Board's decision. The sole issue presented is whether the 10 percent penalty authorized by section 5814 must be assessed against the entire cost of the class of Consani's workers' compensation benefits comprising medical expenses, including that portion thereof the employer voluntarily paid without delay before any award was made.

## II. DISCUSSION

Section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. . . ."

A weight-reduction program is a covered medical expense under section 4600 if it is prescribed to " 'cure *or relieve* from the effects of the injury . . . .' " (*Braewood Convalescent Hospital* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 169 [193 Cal.Rptr. 157, 666 P.2d 14].) Thus, the penalty prescribed by section 5814 may be imposed if there is unreasonable delay in providing the injured worker with a weight-reduction program. We must decide how, in these circumstances, that penalty should be computed.

The Supreme Court, prior to its decision in *Gallamore,* considered the issue of whether a section 5814 penalty could be assessed against a subsequent award of permanent disability where no permanent disability payment had been delayed, where the only delay in payments to the injured employee was that of temporary disability pursuant to a separate and earlier award therefor, and where *untimely* preaward payments of temporary disability had been made by the employer. (*Garcia* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 687 [100 Cal.Rptr. 149, 493 P.2d 877].) *Garcia*

held: "[W]here there has been an award of temporary disability indemnity, and a subsequent award is made giving the applicant permanent disability indemnity, a delay with respect to making payment under one award for one type of benefit does not entitle the applicant to have the penalty applied to payments under the other award for a different type of benefit where there has been no delay with respect to the latter payments." (P. 690, fn. omitted.)

*Gallamore* involved an application by petitioner for assessment of three separate penalties against an award of permanent disability benefits which were not commenced within four days after the termination of temporary disability benefits. (§ 4650.)[2] Six weeks after terminating temporary disability payments, the employer commenced payment of permanent disability payments to the employee prior to an award therefor.

■■ ■ ■ *Gallamore* presented, inter alia, the following issue germane to this case:[3] "[W]hether the penalty [under section 5814] for a preaward delinquency *affecting only a particular class of benefits* owing the applicant must be assessed against the entire amount of the ultimate aggregate award, including benefits of types which have been promptly paid." (23 Cal.3d at p. 821, italics added.) The court held that "each penalty must be assessed only against the class of benefits which was actually delayed or refused" (*ibid.*), and further summarized its holding as follows: "[T]he penalty is to be computed by assessing 10 percent of the entire amount ultimately awarded *for the particular class of benefit* which has been unreasonably delayed or withheld." (*Id.* at p. 827, italics added.)

The parties in *Gallamore* sought no middle ground in their respective positions on the penalty application of section 5814. The applicant urged that a 10 percent penalty be assessed against all portions of the aggregate amount of the award, "including those portions which may contain *other types* of compensation benefits, payment of which was neither delayed nor refused." (23 Cal.3d at p. 824, italics added.) The carrier sought confinement of the penalty "to the *net* amount of benefits remaining unpaid, thereby permitting credit to the employer or carrier for amounts previously paid

---

[2]Section 4650, subdivision (b) now requires permanent disability payments to be made "within 14 days after the date of last payment of temporary disability indemnity."

[3]Prior to *Gallamore*, the law was clear that unreasonable delay in advancing compensation benefits prior to and in anticipation of an award triggers assessment of the 10 percent penalty of section 5814. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].) *Gallamore* established, inter alia, that the amount of the penalty did not vary depending on whether the delinquency occurred prior to or subsequent to the award, that such penalties were mandatory even though the delinquency was de minimis, and that multiple penalties were assessable for successive delays in payment of compensation benefits. (23 Cal.3d at pp. 821-824.)

without delay on the specific benefit awarded." (*Id.* at p. 827, italics in original.) Both positions were rejected by the *Gallamore* court.

Here, however, Safeway urges that the Supreme Court in *Gallamore* reaffirmed, or reemphasized through its reference to *Garcia*, the general proposition that *any* voluntary preaward payments of benefits, even if of the *same class* of benefits as those unreasonably delayed, must be excluded from the penalty calculation of section 5814.

The roots of the penalty calculation dispute in the case at bench are found, in part, in the footnote to the *Garcia* language quoted by *Gallamore*, as discussed *post*. The *Garcia* footnote provides as follows: "The only temporary disability benefits awarded to petitioner were for the period during which he was hospitalized in November 1968. *Had respondent employer made voluntary payments of temporary disability benefits before an application for compensation was filed or an award issued, the penalty imposed for delay in providing temporary disability benefits could not have been applied to such voluntary payments.* (*Vogh* v. *Workmen's Comp. App. Bd.* [1968] 264 Cal.App.2d 724, 728-729 . . . ; see also *Langer* v. *Workmen's Comp. App. Bd.* [1968] 258 Cal.App.2d 400, 405-406 . . . .) [¶] Respondent employer provided some medical treatment to petitioner prior to issuance of the award. Medical treatment reasonably required to cure or relieve an injured employee from the effects of injury constitutes a benefit conferred upon him by statute [§ 4600]; and where care has been unreasonably refused or payment therefor unreasonably delayed, the 10 percent penalty under section 5814 . . . is applicable. (*Hockett* v. *Industrial Acc. Com.* [1959] 170 Cal.App.2d 155, 157-158 . . . .) *However, in view of the fact that the penalty is not applicable to payments voluntarily made prior to issuance of an award, admittedly the cost of such medical treatment as was voluntarily paid by respondent employer on petitioner's behalf prior to issuance of an award, is not subject to the penalty.*" (6 Cal.3d at p. 690, fn. 2, italics added, hereafter *Garcia* footnote 2.)

*Garcia* footnote 2 is dicta. In *Garcia*, there were no timely,[4] voluntary preaward payments of *any* class of workers' compensation benefits to the claimant. The only issue addressed was whether a previously imposed penalty, under a prior award for the unreasonable delay of temporary disability benefits, could be additionally assessed against a subsequent award of permanent disability benefits timely provided. *Garcia* refused to extend the penalty forward to include another separate award, involving a different

---

[4] In *Garcia*, the employer had voluntarily made preaward payments of some workers' compensation benefits, but paid them in an untimely manner. The Supreme Court there recognized that failure to timely pay such benefits could support a factual finding that those untimely payments were unreasonably delayed, triggering the application of section 5814. (*Garcia* v. *Workmen's Comp. Appeals Bd.*, *supra*, 6 Cal.3d at pp. 688, 690.)

class of benefits, where there had been no delay with respect to the latter class of benefits. Further, *Garcia* and the cases cited therein in support of footnote 2 are inapposite to the situation where, as here, the benefit payment delayed is of the same *class* as the benefits voluntarily and timely paid without compulsion of an award.

In *Vogh* v. *Workmen's Comp. App. Bd.* (1968) 264 Cal.App.2d 724, 728-729 [70 Cal.Rptr. 722], the contention that a penalty assessed for delay in payment of an award of permanent disability indemnity and a life pension should also be assessed against benefits of a *different class* theretofore voluntarily provided (temporary disability) was rejected.

In *Langer* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 400 [65 Cal.Rptr. 598], the carrier delayed payment of temporary disability following an award therefor. Subsequently, applicant was awarded a penalty against the temporary disability to commence on the date of the Board decision, rather than the earlier date when liability for temporary disability had commenced. The applicant sought review, contending the penalty should be assessed against all temporary disability rather than only that payable after the penalty award. The court agreed, holding that all temporary disability payments, made under compulsion of the award, were subject to the penalty. (*Id.* at pp. 406-407.)

The carrier contended that a penalty should not be assessed against the temporary disability which was paid voluntarily. In observing that temporary disability paid pursuant to an award was *not* voluntary, the *Langer* court said: "Defendants' argument is entirely in the abstract. They did not make any payments voluntarily. This case therefore does not involve the question whether the penalty of section 5814 should extend to voluntary payments made before the employee files an application for compensation, nor even to the question whether the penalty extends to truly voluntary payments made after an application for compensation is filed, but before an award issues. *Much can be said for the proposition that the penalty should not apply to such payments, but defendants are in no position to urge the point.*" (258 Cal.App.2d at pp. 405-406, italics added.)

The court's comments emphasized above are purely dicta. The *Langer* court never reached the holding for which it has come to be cited, i.e., that no penalty should be assessed against voluntarily and timely paid preaward benefits. Nevertheless, this language became a principal basis for the dicta of *Garcia* footnote 2, *ante.*

The final case cited in *Garcia* footnote 2, *Hockett* v. *Industrial Acc. Com.* (1959) 170 Cal.App.2d 155 [338 P.2d 604], involved the primary issue of whether medical treatment was included within the definition of "compen-

sation" under section 5814. The court held that it was, and that Hockett was entitled to a penalty for delay of medical treatment. (*Id.* at pp. 157-158.) There is no discussion in *Hockett* of voluntary preaward payment of workers' compensation benefits and whether they are exempt from a penalty.

The comments in *Garcia* footnote 2 regarding the insulation from penalty calculations of preaward benefits voluntarily and timely paid were, thus, generated solely from dicta in *Vogh* and *Langer*.

Preliminarily, and contrary to Safeway's position, we read the *Gallamore* reference to the *Garcia* line of cases, and specifically *Gallamore*'s "types of benefits" analysis,[5] as cited in support of its holding that a penalty assessment for unreasonable delay in payment for one type of benefit cannot be applied against the payments for a *different type of benefit* paid without delay. (23 Cal.3d at p. 826.)

Conversely, neither *Gallamore* nor *Garcia* held or purported to hold, as Safeway urges, that the penalty provisions of section 5814 are not assessable against voluntary nondelayed preaward benefit payments *of the same class* as that of the unreasonably delayed benefit payment.

This is made even clearer by an analysis of the cases cited in *Gallamore* as supporting or extending the rationale of *Garcia*. (23 Cal.3d at pp. 824-825.)

*Manning* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 655, 658-659 [89 Cal.Rptr. 76] held that a delay in furnishing *permanent disability* benefits did not authorize penalty assessment against previously awarded *temporary disability*.

*Daniels* v. *Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 504, 507 [104 Cal.Rptr. 129] restricted the penalty assessment to 10 percent of temporary disability payments awarded for preaward delays in such payments, and refused to extend the penalty to other classes of benefits also included in the award.

*State Comp. Ins. Fund* v. *Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 374, 376 [110 Cal.Rptr. 757] disapproved extension of a 10 percent penalty for unreasonable delay in payment of preaward temporary disability benefits to the portions of the total award for permanent disability and other benefits, payment of none of which was delayed.

Within the context of these decisions, *Gallamore* plainly held that: "[T]he penalty is to be computed by assessing 10 percent of the entire amount

---

[5] The analysis in *Gallamore* concerning the *Garcia* line of cases, quoted at page 21, *post*, makes no reference whatsoever to *Garcia* footnote 2.

ultimately awarded for the particular class of benefit which has been unreasonably delayed or withheld." (23 Cal.3d at p. 827.) Nevertheless, following *Gallamore*, a conflict in appellate decisions has evolved concerning *Gallamore*'s approval of the "*Manning, Garcia, Daniels* and *State Comp. Ins. Fund* line of cases which, as discussed above, developed the rule that the penalty should not be applied to *those types of benefits* which were neither delayed nor refused." (P. 826, italics added.)

Those "types of benefits" neither delayed nor refused which are excluded from section 5814 penalty consideration, discussed in the *Gallamore* passage above quoted to explain the *Garcia-Manning* rationale, must be benefits of a class or type *different* from that in which the unreasonably delayed or refused benefit is included, in order to be consistent with that rationale and *Gallamore*'s holding.

A contrary interpretation of *Gallamore*'s "types of benefits" language was reached in *County of Los Angeles* v. *Workers' Comp. Appeals Bd. (Crowe)* (1980) 103 Cal.App.3d 877 [163 Cal.Rptr. 246]. There the employer county conceded an unreasonable delay in making voluntary permanent disability payments to its employee Crowe from January 25, 1977, to July 11, 1977. In March 1977, by an appeals-board-approved compromise and release, the parties settled the penalty claim for any delay by county on or before March 28, 1977. On July 11, 1977, all delayed permanent disability payments were brought to date; all permanent disability payments were thereafter timely made. No other type of workers' compensation benefits owed Crowe was delayed by county.

At hearing, the WCJ found Crowe permanently totally disabled and in need of further medical care arising from his industrial injury. Crowe was awarded permanent disability benefits ($21,000) payable at $52.50 per week for 400 weeks, and a life pension thereafter of $48.46 per week. A 10 percent penalty for unreasonable delay in payment of permanent disability payments to Crowe was assessed on the awarded permanent disability (including life pension) and on awarded future medical treatment. *No* penalty was assessed on the permanent disability assessed up to March 28, 1977, because of the settlement agreement.

Conceding that, if the penalty applied to the entire permanent disability award, it applied to the life pension as but part of that permanent disability benefit, county argued the penalty should be limited only to the portion of permanent disability payments actually unreasonably delayed. The *Crowe* court agreed. In upholding county's position, the *Crowe* court, we believe, misinterpreted the *Gallamore* holding, as well as its "types of benefits" language above discussed, and its reference to the *Daniels* et al. line of cases. We agree with *Toccalino* v. *Workers' Comp. Appeals Bd.* (1982) 128

Cal.App.3d 543, 556 [180 Cal.Rptr. 427], a case finding *Crowe* irreconcilable with *Gallamore*, that *Gallamore* cited *Daniels* et al. for a "narrower purpose" (italics omitted) than the one interpreted by *Crowe*.

Extending the *Garcia-Manning* rationale, *Daniels* simply rejected a contention that a 10 percent penalty assessed against three months of preaward temporary disability payments unreasonably delayed should be applied to the full amount of a subsequent award, including benefits of different classes; i.e., permanent disability, medical, and medical-legal, as well as additional temporary disability. (27 Cal.App.3d at pp. 505-506.) *Daniels* was cited in *Gallamore* only for the "narrower purpose" *Toccalino* recognized of illustrating an extension of *Garcia-Manning* to a situation where "the delay in payments occurred *prior* to the entry of an award." (*Gallamore* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d at p. 825, italics added.) A close reading of *Daniels* indicates the question we confront here was never there considered. *Daniels* did not involve an express claim made by the employee that a delay in payments of temporary disability should generate a penalty against all paid benefits of that class *only*. Rather, the penalty claim in *Daniels* was simply too overinclusive to be cognizable under the *Garcia-Manning* "types of benefits" analysis because its assessment was sought against a total award, including benefits of classes different from that of temporary disability.

We are unable, accordingly, to reach here the result reached by *Crowe*, because it cannot be reconciled with the Supreme Court's *Gallamore* holding. *Gallamore* clearly cited *Garcia*, *Manning*, and their progeny in its "class of benefit[s]" analysis for the principle that a "penalty should not be applied to those *types* [i.e., classes] of benefits which were neither delayed nor refused." (23 Cal.3d at p. 826, italics added.) It did not cite those cases to undermine its holding by limiting the penalty to only those benefits of the same class actually unreasonably delayed. We agree with the Fifth District's decision in *Toccalino* that "a reluctance . . . to impose a penalty upon a total award of a class of benefits when only a portion has been delayed . . . ignores the thrust of the reasoning in *Gallamore* and its interpretation of the clear words of the statute."[6] (128 Cal.App.3d at p. 556.)

---

[6] *Kaminski* v. *Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 778, 782 [179 Cal.Rptr. 125], a Fourth District decision, interprets *Gallamore* and its prior discussion in *Ramsey* v. *Workmen's Comp. App. Bd.* (1969) 2 Cal.App.3d 693 [83 Cal.Rptr. 51], overruled on other grounds in *Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 231 [133 Cal.Rptr. 517, 555 P.2d 303], as directing application of the penalty to payments made under compulsion of award while excluding "payments voluntarily provided before an award is made." This position, too, cannot be reconciled with *Gallamore*. "[I]t is now well established that if the carrier unreasonably delays in advancing compensation benefits *prior to and in anticipation of an award*, then the statutory penalty should be assessed. [Citations.] . . . 'The statute does not distinguish between the refusal to pay prior to and the refusal to pay subsequent to the award, and no persuasive reasons have been advanced why any such distinction should be

In urging the Board's decision be upheld, Safeway next refers us to *Gallamore*'s admonition that "In penalty cases the board should proceed with a view toward achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or carrier of harsh and unreasonable penalties." (23 Cal.3d at p. 828.)

Safeway argues that such "fair balance" will be grossly distorted if it is assessed a 10 percent penalty ($4,453.78) against the medical treatment benefits it voluntarily and timely paid in the sum of $44,537.81 because it unreasonably delayed payment of $1,244 for Consani's weight-loss program.

Neither the employer nor the Board, however, is authorized to adjust or eliminate the statutory penalty of section 5814 simply because, on an ad hoc basis, such a mathematical analysis may produce an arguably disparate or unfair result. The penalty provision of section 5814 may not be undermined because the unreasonably delayed payment of a portion of a class of benefit represents only a small or de minimis amount of the total of that class.

█ Section 5814 is the goad for securing timely payment of compensation to injured working men and women without delay. (*Toccalino* v. *Workers' Comp. Appeals Bd.*, *supra*, 128 Cal.App.3d at p. 554.) One of its principal purposes is to encourage employers or their workers' compensation insurance carriers to make payments of compensation in a reasonable and timely fashion to speed the recovery and return to work of injured employees as rapidly as possible. (See *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76].) An equally important purpose of section 5814 is to encourage timely payments of compensation to injured working people to promptly ameliorate economic hardship because of the interruption of their employment and concomitant loss of income.

The employer on the other hand is afforded due process of law before section 5814 is applied with the protection of the necessity of an administrative agency holding an evidentiary hearing, and making the finding on the evidence there adduced that the delay in payment of compensation or the refusal to pay compensation was *unreasonable*.

We also recognize that, in virtually all cases, the employee is precluded from pursuing a workers' compensation insurance carrier for breaching a duty of good faith owed him on the delay of payment of compensation benefits because of the exclusivity of remedy provided by the California workers' compensation laws when payment has been unreasonably delayed.

made.' " (*Gallamore* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d at p. 822, italics added.)

(*Cervantes* v. *Great American Ins. Co.* (1983) 140 Cal.App.3d 763, 767 [189 Cal.Rptr. 761].) That employee's only practical means of ensuring timely payment of the benefits to which he is entitled is the threat of the imposition of the penalty provisions of section 5814 if unreasonable delay is encountered.

 *Gallamore* recognized that unreasonable preaward delays in compensation payment merit penalties, and approved penalties for " 'de minimis' " delinquencies as well as multiple penalties for successive delinquencies. The Supreme Court's holding, per se, defined the "fair balance" formula to be mandatorily applied in assessment of penalties under section 5814 for unreasonable delay in payment of benefits. *Gallamore* clearly reached its result after balancing the parties' interests by avoiding either of the two extremes urged, to wit, a penalty only on benefits actually delayed or a penalty on all categories of benefits. Rather, *Gallamore* adopted a more moderate construction of the statutory language and held the phrase "full amount of the . . . award" in section 5814 refers to the *full* amount of the award for the *particular class* of benefits delayed or withheld. (23 Cal.3d at p. 826.)

Unreasonable delay in payment of one or two medical bills, while potentially disastrous to a working person, is of little adverse consequence to an employer or its carrier unless the prospect of a penalty assessment therefor against the aggregate benefits of that class is present. Unreasonable failure to timely pay benefit sums of what, from the viewpoint of the employer or its carrier, is a minor amount may nonetheless produce substantial economic hardship and unwarranted emotional distress for the employee at a time of great need. The incentive for prompt payment of legitimate employee benefits is clearly raised, if the employer's unreasonable delay or refusal to pay merits assessment of a substantial penalty against the aggregate amount of the class of benefits to which the delayed or refused benefit belongs. (*Toccalino* v. *Workers' Comp. Appeals Bd.*, *supra*, 128 Cal.App.3d at p. 556.)

The application of section 5814, as *Gallamore* holds, cannot be subverted by the Board's conclusion an inequity results, mathematically or otherwise, by application of that holding. Employers or their carriers are liable to their insured employees for 10 percent of the aggregate award of a class of workers' compensation benefits ultimately paid, including those benefits of the class voluntarily and timely paid prior to and in anticipation of an award, for unreasonable delay in payment or refusal to pay any portion of that class of benefit.

We hold that the 10 percent penalty, for unreasonably delaying payment of the weight-loss portion of Consani's medical payments benefits, is to be

assessed against the total award for the entire class of such medical payments benefits, including preaward payments voluntarily and timely made and future awards, if any, made therefor.

## III. DISPOSITION

The decision of the Board is annulled. The cause is remanded to the Board for further proceedings consistent with the views expressed herein. The parties shall bear their own costs.

Kline, P. J., and Smith, J., concurred.

Petitioner's application for review by the Supreme Court was denied April 11, 1991. Panelli, J., was of the opinion that the application should be granted.