[No. S018824. June 28, 1993.]

SCOTT RUSSELL DuBOIS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, ROBERT A.
ROHRER et al., Respondents.

COUNSEL

William A. Herreras for Petitioner.

Phillip N. Bruce as Amicus Curiae on behalf of Petitioner.

John M. Rea, Leland D. Starkey, Vanessa L. Holton, Raoul Thorbourne and Sue Tuskes for Respondents.

OPINION

GEORGE, J.—In this case we must determine whether the State of California Uninsured Employers Fund (UEF), whose function it is to pay workers' compensation benefits in the event the employer of an injured worker is not insured for workers' compensation liability, is subject to payment of a penalty pursuant to Labor Code section 5814[1] for the UEF's own unreasonable delay in payment of benefits to the injured worker.

The UEF asserts that section 3716.2 exempts it from any penalty for unreasonable delay in the payment of benefits pursuant to section 5814, whether the entity responsible for the delay is the employer or the UEF. Scott Russell DuBois, an employee whose benefits were delayed, asserts that section 3716.2 exempts the UEF only from paying those penalties that otherwise would be due from an employer for unreasonable delay or other misconduct on the part of the employer, but not from the UEF's own unreasonable delay in paying benefits. We conclude that sections 3716 and 3716.2, defining the obligations and limiting the liability of the UEF, do not permit imposition of any penalty mandated by section 5814 against the UEF, even for its own unreasonable delay in paying valid claims for workers' compensation. Accordingly, we reverse the judgment of the Court of Appeal and order it to reinstate the decision of the Workers' Compensation Appeals Board (WCAB), which had determined that the UEF is not liable for the payment of a penalty pursuant to section 5814.

I

On June 24, 1988, applicant DuBois sustained an injury to his neck while employed by Robert Rohrer, doing business as Rohrer Trucking, which

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

entity subsequently was determined by the WCAB to be willfully uninsured for its liability to pay workers' compensation. The Rehabilitation Bureau of the Division of Industrial Accidents (Rehabilitation Bureau) determined DuBois was eligible for temporary disability indemnity payments during vocational rehabilitation (§§ 139.5, 3207) and, on April 20, 1989, awarded him vocational rehabilitation temporary disability (VRTD) benefits from the date of October 13, 1988, forward, its decision and order subsequently becoming final when Rohrer Trucking did not object or appeal. Despite its lack of insurance, Rohrer Trucking until mid-1989 paid most of DuBois's medical bills and provided VRTD benefits. On August 22, 1989, after conducting a hearing, a workers' compensation judge (WCJ) made "findings and [an] award" against Rohrer Trucking for the payment of the VRTD benefits to DuBois.

When Rohrer Trucking failed to make such payments, DuBois requested a supplemental hearing before the WCAB, seeking, pursuant to section 3716, subdivision (a), to collect from the UEF the award DuBois had received against Rohrer Trucking, and seeking, pursuant to section 5814, an additional amount in penalties for the unreasonable delay on the part of Rohrer Trucking in paying the benefits. On December 14, 1989, defendant Director of Industrial Relations, as administrator of the UEF Fund (§ 3710), stipulated with DuBois that his injury had caused his temporary disability and had created the need for VRTD benefits from June 25, 1988, to December 14, 1989, and for medical treatment. The UEF further stipulated it would administer and pay the balance of unpaid VRTD benefits that were owed DuBois through December 14, 1989, continue to pay VRTD benefits pursuant to the Rehabilitation Bureau's decision and order of April 20, 1989, satisfy an outstanding lien for rehabilitation services previously received by DuBois, and "pay, adjust or litigate unpaid self-procured medical" expenses. On the same date, this stipulation was entered by a WCJ as an award in favor of DuBois against the UEF. Neither the stipulation nor the award included provision for any penalties.

Not having received any payment from the UEF, DuBois on February 15, 1990, filed a petition with the WCAB, requesting that, pursuant to section 5814, a penalty of 10 percent be assessed against the UEF for its own unreasonable delay in paying the stipulated benefits. On May 24, 1990, the WCJ conducted a hearing to determine whether the UEF unreasonably had delayed making the payments. At that proceeding, DuBois stated he had received no payments under the December 14, 1989, award, and a UEF representative stated that the UEF had been unable to determine whether payments to DuBois had been made. Having requested and received written briefing on the question whether section 3716.2 precluded the assessment of

any penalties against the UEF, the WCJ on June 14, 1990, issued findings and an award, determining that the UEF unreasonably had delayed payment of the stipulated benefits, and that the UEF was not exempted by section 3716.2 from penalties for its own unreasonable delay in paying the award. The WCJ ordered the UEF to pay the benefits as well as a penalty of 10 percent of the benefits awarded on December 14, 1989, pursuant to section 5814.

The UEF petitioned the WCAB for reconsideration. After granting the petition, the WCAB reversed the decision of the WCJ, concluding that section 3716.2 exempted the UEF from payment of any penalties for its own failure to pay benefits in a timely manner. Thereafter, the Court of Appeal summarily denied DuBois's petition for a writ of review, and DuBois petitioned for our review. We granted review and ordered the case transferred to the Court of Appeal, directing that it issue the writ requested and review the case.

The Court of Appeal, over the dissent of one justice, determined that the language of section 3716.2 is ambiguous, and, relying upon the legislative history of that statute, construed it to provide that, although the UEF may not be held liable for penalties assessed against the uninsured employer, it is not exempt from the payment of penalties for its own unreasonable delay in paying workers' compensation benefits. The dissent concluded that section 3716.2 precludes the imposition of any penalties against the UEF for its own unreasonable delay. We granted review.

## II

The parties and the Court of Appeal have focussed upon the meaning of the sentence, contained in section 3716.2, that provides: "The Uninsured Employers Fund shall not be liable for any penalties or for the payment of interest on any awards." The parties request that we determine whether that directive exempts the UEF from the penalties for unreasonable delay that may be imposed upon employers or their insurance carriers in workers' compensation cases.

A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) In construing a statute, our first task is to look to the language of the statute itself. (*Ibid.*) When the language is clear and there is no uncertainty as to the

legislative intent, we look no further and simply enforce the statute according to its terms. (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 464 [253 Cal.Rptr. 236, 763 P.2d 1326]; *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 726 [182 Cal.Rptr. 778, 644 P.2d 1257]; see Code Civ. Proc., §§ 1858, 1859.)

■ Additionally, however, we must consider the above quoted sentence in the context of the entire statute (§ 3716.2) and the statutory scheme of which it is a part. "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d 222, 230; see also *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] . . . . 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d 222, 230-231; see also *Nickelsberg* v. *Workers' Comp. Appeals Bd.*, *supra*, 54 Cal.3d 288, 298; *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624-625 [200 Cal.Rptr. 440, 677 P.2d 846].) ■ Therefore, to determine whether the Legislature intended to render the UEF liable, pursuant to section 5814, for its own unreasonable delay in paying benefits, we review not only the language of section 3716.2 but the legislative enactments of which it is a part.

## III

Pursuant to the "plenary power" the Constitution has granted to the Legislature "to create, and enforce a complete system of workers' compensation" (Cal. Const., art. XIV, § 4), the Legislature has created a statutory scheme requiring all employers to secure the payment of workers' compensation to injured workers, either by obtaining insurance coverage of their liability or by obtaining a certificate of consent to self-insure issued by the Director of Industrial Relations. (§ 3700 et seq.) ■ The right to workers' compensation benefits is wholly statutory and is not derived from common law. (*Graczyk* v. *Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997, 1002-1003 [229 Cal.Rptr. 494, 58 A.L.R.4th 1245].)

In 1971, the California Legislature created the UEF in order to provide a source of funds for injured workers whose employers have failed or refused

either to obtain workers' compensation insurance coverage or to qualify as self-insurers for the employers' liability. (§ 3716, subd. (b); see *Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 173 [113 Cal.Rptr. 217, 520 P.2d 1033]; *Jenkins* v. *Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 259, 263 [107 Cal.Rptr. 130].) The program was "designed to be financed from various penalties which may be assessed against an uninsured employer," as well as from state tax revenues. (1 Herlick, Cal. Workers' Comp. Law (4th ed. 1990) § 3.20, p. 3-18; see also, *id.*, § 11.9, p. 11-8.)

 The nature of the intended restrictions upon the liability of the UEF is reflected in the statutes creating that fund and defining its obligations. Initially, we consider the Legislature's express statement of its intent. Section 3716, subdivision (b), provides in pertinent part that the UEF was created "to ensure that workers who happen to be employed by illegally uninsured employers are not *deprived* of workers' compensation benefits, and is not created as a source of contribution to insurance carriers, or self-insured, or legally insured employers." (Italics added.) The language of this subdivision indicates that the primary concern of the Legislature was to create a source of benefits to the employee who otherwise would receive no benefits because of the failure or refusal of his or her employer to obtain workers' compensation liability coverage. This provision does not express a legislative concern for the timeliness of the benefits to be provided by the UEF. The clause specifying that the UEF is not to be a source of contribution for the benefit of employers or carriers emphasizes the Legislature's intent to limit the purposes for which the UEF's funds are to be applied, and to impose only derivative liability upon the UEF.

Under the statutory scheme, section 3715 requires that an injured employee who seeks payment of compensation and whose employer is uninsured apply to the WCAB, which must make an award against the employer as if the employer *had* complied with the mandate that it secure the payment of workers' compensation. If the uninsured employer fails to pay the compensation or furnish a bond within 10 days after receiving notice of the award entered against the employer, the injured employee then may apply to obtain payment from the UEF. (§ 3716, subd. (a).[2])

 Pursuant to section 3716, subdivision (a), failure of the employer to pay the award within 10 days of notification thereof is made a condition

---

[2]Section 3716, subdivision (a), provides in pertinent part: "If the employer fails to pay the compensation required by Section 3715 to the person entitled thereto, or fails to furnish the bond required by Section 3715 within a period of 10 days after notification of the award, the award, upon application by the person entitled thereto, shall be paid by the director from the Uninsured Employers Fund, which fund is hereby created in the State Treasury."

precedent to a demand for payment by the employee upon the UEF. (*Ortiz v. Workers' Comp. Appeals Bd.* (1992) 4 Cal.App.4th 392, 396-397 [5 Cal.Rptr.2d 484]; *Sobiniak v. Workers' Comp. Appeals Bd.* (1984) 156 Cal.App.3d 448, 451-452 [202 Cal.Rptr. 789]; *Symmar, Inc. v. Workers' Comp. Appeals Bd.* (1982) 135 Cal.App.3d 65, 70-71 [185 Cal.Rptr. 67]; see *Jenkins v. Workmen's Comp. Appeals Bd.*, *supra*, 31 Cal.App.3d 259, 263 [right created (to payment of benefits by UEF) is based upon fact of nonpayment of the preexisting obligation, i.e., the award of compensation]; cf. *Germann v. Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 776, 780, fn. 2 [176 Cal.Rptr. 868].) ██ Thus, it is apparent the Legislature intended to define the liability of the UEF for the payment of an award as derivative rather than vicarious, and to render the employer primarily responsible for the payment of the award even in a case in which the UEF has participated and ultimately may be required to pay the award. Nothing in these sections suggests the Legislature intended the UEF to pay any amount in excess of, or different from, the amount awarded against the uninsured employer.

We also observe that although section 3716, subdivision (a), requires the UEF to pay benefits upon demand in the event the employer fails to do so within 10 days after being notified of an award against the employer, that statute does not set a deadline by which the UEF must commence making payments. (Contrast, e.g., §§ 4650 [fixing time of commencement of temporary and permanent disability payments by employer or insurer], and 4650.5 [fixing time of commencement of disability payments arising from injury by criminal act].)

In light of the apparent legislative intent to ensure basic compensation to all employees otherwise deprived of benefits, the derivative nature of the UEF's statutory liability, and the failure of the Legislature expressly to provide a deadline within which the UEF must pay benefits after entry of the award and failure by the uninsured employer to pay the award, we believe there is no statutory basis to support the underlying assertion of DuBois and amicus curiae that the UEF may be subject to a penalty for its own unreasonable delay in paying benefits.

Subsequent enactments pertaining to the UEF add no support to the foregoing assertion by DuBois and amicus curiae. Following the creation of the UEF, this court in 1976, in *Flores v. Workmen's Comp. Appeals Bd.*, *supra*, 11 Cal.3d 171, interpreted the "award" for which the UEF was liable (pursuant to § 3716) to include a penalty representing a 10 percent increment in the basic amount of the award imposed against an employer wilfully failing to secure the payment of workers' compensation (§ 4554), and to

include additional attorney fees awarded by reason of the employer's failure (whether wilful or negligent) to secure payment of compensation (§ 4555). (11 Cal.3d 171, 175-178.) In reaching this conclusion in *Flores*, we responded to the argument made by the UEF that, "as a matter of policy, the limited money available to the Fund should be reserved for the payment of basic compensation awards rather than statutory 'penalties,' " by observing: "[T]hat is not what the present statutory provisions dictate. As A. P. Herbert so unforgettably quipped: 'If Parliament does not mean what it says it must say so.' (Herbert, The Uncommon Law (6th ed. 1948) p. 313.)" (11 Cal.3d 171, 177.)

It is important to recognize that in *Flores*, the liability of the UEF for its own delay or for other misconduct was not in question, and, in fact, we expressly acknowledged in our decision that the UEF was not at fault. (*Flores* v. *Workmen's Comp. Appeals Bd.*, *supra*, 11 Cal.3d 171, 177-178.) Thus, although that decision briefly (as explained below) provided authority for the proposition that the UEF could be liable for the entire amount of an award assessed against an employer, including (in excess of basic compensation payments) amounts representing penalties for the *employer's* failure to secure the payment of compensation, the decision did not introduce an interpretation of the basic language of section 3716 or related sections that would permit the UEF to be held liable for similar penalties based upon *its own* misconduct.

In 1976, apparently in response to our decision in *Flores* v. *Workmen's Comp. Appeals Bd.*, *supra*, 11 Cal.3d 171 (see 1 Herlick, Cal. Workers' Comp. Law, *supra*, § 3.20, pp. 3-18, 3-19; *id.*, § 11.9, p. 11-10), the Legislature enacted section 3716.2.[3] The first sentence of that statute resolves the issue raised in *Flores*—whether the UEF ought to be liable for the penalties (and attorney fees) imposed upon an employer who has failed to secure the payment of workers' compensation—by providing explicitly that the director shall pay only such benefits as would accrue against an employer properly insured for workers' compensation liability.

More significant to the issue presented in the present case, however, is the Legislature's intent, manifested in section 3716.2, to limit the liability of the

---

[3]As originally enacted, section 3716.2 provided: "Notwithstanding the precise elements of an award of compensation benefits, and notwithstanding the claim and demand for payment being made therefor to the Director of Industrial Relations, the director, as administrator of the Uninsured Employers Fund, shall pay the claimant only such benefits allowed, recognizing proper liens thereon, that would have accrued against an employer properly insured for workers' compensation liability. However, in civil suits by the director to enforce payment of an award, including procedures pursuant to Section 3717, the total amount of the award, including interest, other penalties and attorney fees granted by the award, shall be sought. Recovery, by the director, in a civil suit, or other means, of awarded benefits in excess of amounts paid the claimant by the Uninsured Employers Fund, shall be paid over to the injured employee, or his representative as the case may be." (Stats. 1976, ch. 1036, § 7, p. 4642.)

UEF by equating the benefits it must pay with those due from the employer. The imposition of a penalty upon the UEF for its own unreasonable delay would be inconsistent with the express limitation placed upon its liability by this provision. The next sentence of the statute underscores the "employer" limitation upon the liability of the UEF, by authorizing that entity to pursue, in a civil action against the employer, enforcement of payment of the entire award, including penalties, interest, and attorney fees granted by the award (notwithstanding the UEF's own immunity from penalties and interest) and to pay to the employee any amounts collected from the employer that exceed those for which the UEF was liable.

In 1980, following enactment of section 3716.2, the Legislature also provided that an injured employee whose employer has failed to secure the payment of workers' compensation is not limited to the exclusive remedy of seeking compensation benefits from the UEF. The employee possesses the right to proceed against the employer in the courts, by initiating a civil action for damages (§ 3706), as well as to seek compensation in a proceeding before the WCAB. (§ 3715.)[4] The provision of these dual rights is consistent with legislative recognition of the limited resources of the UEF and with a related legislative intent not to render entirely coextensive, with the liability of an employer, the liability of the UEF for penalties.

The subsequent amendment of section 3716.2 in 1981 only reinforces the conclusion the Legislature never intended that the UEF should be liable for penalties for its own delay, and in fact intended to narrow further the scope of the UEF's liability. This amendment provides that the UEF "shall not be liable for any penalties or for the payment of interest on any awards." (Assem. Bill No. 1529 (1981-1982 Reg. Sess.), enacted by Stats. 1981, ch. 894, § 4, pp. 3409-3410.)[5]

---

[4]Prior to the creation of the UEF in 1971, the employee of an uninsured employer was not required to elect remedies and could bring a civil action for damages against the employer, as well as initiate an administrative proceeding to collect compensation. (*Jenkins* v. *Workmen's Comp. Appeals Bd.*, *supra*, 31 Cal.App.3d 259, 262-263.) At the time it created the UEF, however, the Legislature amended section 3715 to afford alternative remedies to the injured employee of an uninsured employer, thus providing that any proceeding to obtain compensation ultimately culminating in liability for payment on the part of the UEF would be exclusive. (*Ibid.*) Subsequent to the enactment of section 3716.2 in 1976, and prior to its amendment in 1981 absolving the UEF of liability for penalties and interest on an award, the Legislature in 1980 reinstated cumulative remedies by amending section 3715 to allow the injured employee both a civil action and an administrative proceeding. (Stats. 1980, ch. 1091, § 5, p. 3503; see Historical Note, 44A West's Ann. Lab. Code (1989 ed.) § 3715, p. 251.)

[5]As amended, section 3716.2 provides: "Notwithstanding the precise elements of an award of compensation benefits, and notwithstanding the claim and demand for payment being made therefor to the director, the director, as administrator of the Uninsured Employers Fund, shall pay the claimant only such benefits allowed, recognizing proper liens thereon, that would

DuBois suggests the amendment simply demonstrates a legislative intent to exempt the UEF from liability for penalties accruing because of an employer's failure to secure payment of compensation. In view of the historical development of this statute, however, which we may take into account in ascertaining the Legislature's intent (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d 1379, 1387), it is manifest that the language affording the UEF exemption from any penalties was not added to section 3716.2 merely to establish that the UEF would not be liable for any penalties arising from the employer's failure to secure the payment of workers' compensation (§ 4554; see § 4555), because the Legislature already had accomplished that goal in 1976 simply by enacting, in the wake of our decision in *Flores*, section 3716.2 in its original form, limiting the UEF's liability only to payment of those benefits that would accrue against a properly insured employer. In the period between the 1976 enactment of section 3716.2 and its amendment in 1981, no additional statutory or decisional authority emerged to furnish any basis for concluding that the Legislature perceived the need to make more explicit the intent of section 3716.2 effectively to abrogate the holding in *Flores* that the UEF could be liable for penalties and attorney fees imposed upon an employer for its failure to secure the payment of workers' compensation.

DuBois and amicus curiae offer the alternative suggestion that the provision exempting the UEF from the payment of any penalties refers merely to the potential liability of the UEF to pay amounts representing penalties imposed upon the employer for the employer's unreasonable delay in paying benefits (§ 5814) or for some other form of misconduct by the employer (see § 4553 [employee's injury caused by employer's serious and wilful misconduct]; § 4557 [injured employee is a minor illegally employed]), but does not exempt the UEF from liability for its own delay.

■ In support of this interpretation, DuBois points to various reports, made by legislative committees and commissions during the legislative process, which come within the category of material we may consider when the meaning of a statute is uncertain. (*Hutnick* v. *United States Fidelity & Guaranty Co., supra*, 47 Cal.3d 456, 465, fn. 7; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d 1379, 1387; see *Napa Valley*

have accrued against an employer properly insured for workers' compensation liability. *The Uninsured Employers Fund shall not be liable for any penalties or for the payment of interest on any awards.* However, in civil suits by the director to enforce payment of an award, including procedures pursuant to Section 3717, the total amount of the award, including interest, other penalties and attorney fees granted by the award, shall be sought. Recovery, by the director, in a civil suit, or other means, of awarded benefits in excess of amounts paid the claimant by the Uninsured Employers Fund, shall be paid over to the injured employee, or his representative as the case may be." (Italics added.)

*Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 382, fn. 19 [267 Cal.Rptr. 569, 787 P.2d 976]; *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149].)

 In the course of the Legislature's consideration of the amendment to section 3716.2 exempting the UEF from liability for penalties and interest, the Assembly Committee on Finance, Insurance, and Commerce issued a report explaining the purpose of the amendment as follows: "Section 4 is amended to preclude the Fund from being liable for any penalties or for the payment of interest on awards. Because of the nature of the Uninsured Employers Fund, it has no liability for benefits until after a formal proceeding and the employer has failed to act. *Sanctions should not be applied against the Fund for the employer's wrong,* according to proponents." (Italics added.)

The Legislature also received an analysis of Assembly Bill No. 1529, provided by the Department of Industrial Relations, which noted that in most cases in which the UEF was made a party, a penalty was imposed against the uninsured employer pursuant to section 5814 because of the employer's delay in paying benefits. After observing that the payment of such penalties was a substantial fiscal drain on the UEF, the department stated: "The justification for imposing the penalty does not apply to the U.E.F. The penalty is designed to deter carriers and employers from delaying benefits. Since the U.E.F. has no liability for benefits until after they are demanded after a formal award, imposing the penalty on the U.E.F. for the employer's delay will not hasten the U.E.F.'s payment. *The State should not be penalized for the employer's delay.*" (Italics added.)

On the other hand, the description of Assembly Bill No. 1529 prepared by the Legislative Analyst, after the bill twice had been amended, simply provides that the UEF is exempt from "a penalty of 10% in cases where payments of workers' compensation benefits to workers are delayed." The latter description of the bill thus did not serve to limit the nature of the exemption from penalties granted the UEF to those situations in which such delay is attributable to the employer. (See *Hutnick* v. *United States Fidelity & Guaranty Co., supra,* 47 Cal.3d 456, 465, fn. 7 [such materials provide some indication of how a measure was understood by those who voted to enact it]; *Napa Valley Wine Train, Inc.* v. *Public Utilities Com., supra,* 50 Cal.3d 370, 382, fn. 19 [same].)

Even if we were to accept DuBois's interpretation of the amendment to section 3716.2 (based upon statements, in the reports accompanying the bill, that the amendment was intended to exempt the UEF from liability for the

delay or other misconduct of the *employer*), such a construction would not alter our conclusion that the Legislature never intended the UEF to be liable—like an employer or an insurer—for its own delay. Construed in the latter manner, the amendment merely provides an additional limitation on the liability of the UEF for any penalties it might be required to pay as a result of misconduct on the part of the employer. The amendment does not alter the circumstance that nothing in section 3716.2 or in any related statute suggests the UEF has any obligation to pay the employee any amount in excess of the amount recoverable by the employee from his or her uninsured employer.[6]

## IV

DuBois contends, nonetheless, that the penalty prescribed by section 5814 was intended to apply to the UEF. Section 5814, first enacted in 1945 (Stats. 1945, ch. 802, § 2, p. 1497), and last amended in 1965 (Stats. 1965, ch. 1513, § 169, p. 3599), was intended to encourage the timely payment of benefits by rendering costly any delay in payment. (*Jensen* v. *Workers' Comp. Appeals Bd.* (1985) 170 Cal.App.3d 244, 247 [216 Cal.Rptr. 33]; *Jardine* v. *Workers' Comp. Appeals Bd.* (1984) 163 Cal.App.3d 1, 8 [209 Cal.Rptr. 139].)[7] When section 5814 originally was enacted, the UEF was not yet established, and thus it is obvious the Legislature did not have the UEF in mind in creating the penalty provision.

---

[6]We also take note of the circumstance that, at the time the Legislature added language exempting the UEF from liability for any penalites and interest added to an award, it also amended various other related statutes so as to limit the liability of the UEF, while enhancing the ability of that entity to recover amounts that it had paid out. Section 3716, subdivision (b), was added to declare that the legislative purpose in creating the UEF was to ensure the payment of funds to employees rather than to afford contribution to carriers or employers, and subdivision (c) was added to exempt the UEF from the requirement of reimbursing the State Department of Health Services for treatment provided by that department to injured workers. Section 3717 was amended to provide the UEF the right to obtain reimbursement from any individual owning 15 percent or more of the outstanding stock in a corporation that had failed to secure coverage for its workers' compensation liability. (Stats. 1981, ch. 894, § 2, p. 3408; *id.*, § 5, p. 3410.)

Most significantly, section 5814.1 was added, providing (in language similar to section 5814) that when the payment of compensation unreasonably has been delayed or refused prior to the issuance of an award, and the director has provided discretionary compensation, the WCAB shall award the director a penalty to be paid by the employer in the amount of 10 percent of the compensation provided by the director, "such penalty to be in addition to the penalty imposed by Section 5814." (Stats. 1981, ch. 894, § 10, p. 3413.) The provision of a penalty pursuant to section 5814.1, in favor of the director and against the employer for the latter's unreasonable delay, is inconsistent with any legislative intent to permit imposition of a penalty in favor of the *employee* and against the director pursuant to section 5814.

[7]Section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to

DuBois observes, however, that section 5814, contained in a division of the Labor Code mandated to "be liberally construed by the courts with the purpose of extending [that division's] benefits for the protection of persons injured in the course of their employment" (§ 3202; see also *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 241 [193 Cal.Rptr. 547, 666 P.2d 989]; *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 [170 Cal.Rptr. 32, 620 P.2d 618]; *Klee* v. *Workers' Comp. Appeals Bd.* (1989) 211 Cal.App.3d 1519, 1524 [260 Cal.Rptr. 217]), is not, by its terms, limited specifically to employers or their insurers. By the same token, nothing in the language of section 5814 suggests it *was* intended to extend beyond such employers or insurers to a governmental entity such as the UEF.

■ Consistent with the other provisions of the workers' compensation scheme, the assessment imposed by section 5814 is designed to compel the employer of the injured employee, or the employer's workers' compensation insurance carrier, to make payments of compensation in a reasonable and timely fashion (*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 229 [133 Cal.Rptr. 517, 555 P.2d 303]; *Carver* v. *Workers' Comp. Appeals Bd.* (1990) 217 Cal.App.3d 1539, 1547 [266 Cal.Rptr. 718]), and to effect the "equally important purpose" of the statutory scheme—"to encourage timely payments of compensation to injured working people to promptly ameliorate economic hardship [resulting from] the interruption of their employment and concomitant loss of income." (*Consani* v. *Workers' Comp. Appeals Bd.* (1991) 227 Cal.App.3d 12, 23 [277 Cal.Rptr. 619]; see also *Adams* v. *Workers' Comp. Appeals Bd., supra,* 18 Cal.3d at p. 229.) "The penalty has been applied to virtually all types of benefits provided by the workers' compensation laws, including temporary and permanent disability indemnity, interest on an award, . . . amounts awarded as reimbursement for self-procured medical costs" and medical-legal costs. (*Adams, supra,* 18 Cal.3d 226, 229.)

Although section 5814 is denominated a penalty statute, it is considered to be both remedial and penal. (*Carver* v. *Workers' Comp. Appeals Bd., supra,* 217 Cal.App.3d 1539, 1547-1548; *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76] [the remedial aspect is to facilitate return to work of the injured employee as quickly as possible; the penal aspect is to compel the employer to comply with the law fully and promptly].) The 10 percent increase "has been characterized as an increase in the compensation awarded to the injured worker" (*Carver* v. *Workers' Comp. Appeals Bd., supra,* 217 Cal.App.3d 1539, 1547, citing *Anderson* v. *Workers'*

---

rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

*Comp. Appeals Bd.* (1981) 116 Cal.App.3d 954, 960 [172 Cal.Rptr. 398]), and the statute itself requires that the award be amended to include the amount of the penalty imposed. (E.g., *Davison* v. *Industrial Acc. Com.*, *supra*, 241 Cal.App.2d 15, 16.)

It is clear that section 5814 was enacted as an inducement to prompt payment on the part of private employers and their insurers, which otherwise would have an economic incentive to delay or deny the payment of workers' compensation benefits. In contrast, the UEF does not possess this economic incentive. Our decision in *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775 [244 Cal.Rptr. 655, 750 P.2d 297] is illustrative of this distinction. In *Isaacson*, we were confronted with a somewhat similar question of statutory interpretation: whether the provisions of the Unfair Practices Act, imposing liability upon an insurer for unreasonably refusing to settle a case, should be applied to the California Insurance Guarantee Association (CIGA), a governmental entity created to provide an insured with coverage for claims in the event his or her insurer becomes insolvent.

In rejecting the insured's attempt to impose liability upon CIGA for its own conduct in unreasonably refusing to settle a case, we relied in part upon the circumstance that CIGA did not share the economic motives of the private insurer. "[T]he protective function served by the Unfair Practices Act is less necessary with CIGA than with an ordinary insurer. Because CIGA is not a private, profit-oriented enterprise, it does not gain financially by refusing to defend or settle claims. It therefore lacks economic incentive to deal unfairly with insureds." (*Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d 775, 786.) Similarly, in the present case it is clear the protective function of section 5814 would not be served by application of that statute to the UEF in cases in which that entity delays paying benefits, because the UEF does not profit by such delay.

Additionally, the UEF advises that it may have no alternative but to defer payment of benefits whenever it lacks full funding due to state budgetary limitations, a recurring problem since the inception of the UEF. (1 Herlick, Cal. Workers' Comp. Law, *supra*, § 11.9, p. 11-8; see, e.g., *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 905-906, fn. 1 [136 Cal.Rptr. 251, 559 P.2d 606].) The UEF also points out that it does not enjoy the same immediate access to its funds possessed by a private employer or carrier, and, therefore, the threat of penalties for delay would not have the same practical deterrent effect. Checks for disbursements are drawn on the UEF, a fund created in the State Treasury (§ 3716, subd. (a)), necessitating that the UEF apply to the State Controller for the issuance of payment warrants (Gov. Code, § 12440), a process that may be slowed or halted during periods in which the state's budget has not yet been enacted.

DuBois suggests, however, that in any case in which delay on the part of the UEF in paying benefits is attributable to budgetary limitations, such delay could and would not be found unreasonable within the meaning of section 5814 and, therefore, the UEF would not incur the penalty provided by that statute. Under existing authority, the only delay recognized as reasonable as a matter of law, for the purpose of exonerating the employer or the insurance carrier from the penalty imposed by section 5814, is delay caused by the existence of a genuine medical or legal doubt as to the employer's liability for workers' compensation benefits. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 230 [93 Cal.Rptr. 192, 481 P.2d 200]; *Jensen* v. *Workers' Comp. Appeals Bd.*, *supra*, 170 Cal.App.3d 244, 247.) Delay caused by state budgetary shortfalls (or by the multiple-step disbursement process) does not fall within either category of delay (delay caused by medical or legal doubt) deemed acceptable under present law, and would necessitate the creation of special definitions for "reasonable delay" applicable exclusively to the UEF. This need (under DuBois's theory) for separate definitions contradicts DuBois's assertion that the Legislature intended the UEF to be treated in the same fashion as an employer who unreasonably delays benefit payments.

Apart from the foregoing definitional concerns, as a practical matter the proposal that the UEF be permitted to demonstrate that its delay was reasonable, because necessitated by budgetary shortfalls or procedural hindrances, would require the UEF to establish, at an evidentiary hearing, that its delay was reasonable in each case. We do not believe the Legislature intended that the UEF be required to expend its resources in this manner in each case in which delay has occurred.

Finally, it must be observed that, as a general rule, statutory penalty provisions do not apply to public entities. Government Code section 818 provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." In light of the partially penal nature of section 5814, we believe that application of the statutory penalty provision to the UEF is not permitted, absent express legislative authorization.

■ Although, as noted earlier, section 5814 is to be liberally construed, we previously have commented that "the rule of liberal construction stated in section 3202 should not be used to defeat the overall statutory framework and fundamental rules of statutory construction." (*Nickelsberg* v. *Workers' Comp. Appeals Bd.*, *supra*, 54 Cal.3d 288, 298.) ■ A number of additional factors must be considered, including the absence of any express

language (rendering the UEF liable for its own unreasonable delay) in the statutes defining the obligations and liability of the UEF (§§ 3716 and 3716.2; contrast § 3743, subd. (b) ["the (Self-Insurers' Security Fund) shall not be liable for the payment of any penalties assessed for any act or omission on the part of any person other than the fund," including the penalties provided in § 5814]), the absence of an express time limit within which the UEF is to pay an award following nonpayment by an employer and the employee's demand for compensation by the UEF (§ 3716, subd. (a)), the presence in sections 3716 and 3716.2 of language limiting the liability of the UEF to the payment of those benefits that would accrue against a properly insured employer and exempting the UEF from the payment of penalties and interest on awards, the absence of express language in section 5814 indicating that the UEF may be liable under that statute, the protective purpose served by the statute, the WCAB's view that the UEF is not liable for penalties pursuant to section 5814 (see *Nickelsberg* v. *Workers' Comp. Appeals Bd.*, *supra*, 54 Cal.3d 288, 299-300; *Judson Steel Corp.* v. *Workmen's Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668-669 [150 Cal.Rptr. 250, 586 P.2d 564] [agency interpretation entitled to significant respect upon judicial review]), and the general immunity afforded governmental entities (such as the UEF) by Government Code section 818. Our examination of all of these factors leads us to conclude that the Legislature did not intend that the UEF be liable, pursuant to section 5814, for penalties premised upon its own delay, even where the delay engaged in by that entity properly may be characterized as unreasonable.

We greatly sympathize with the plight of injured employees who obtain the right to payment from the UEF, only to face delays in recovering the amounts to which they are legally entitled. We believe, however, that the examination and resolution of this apparently recurring problem is most appropriately left to the Legislature, which will be able to address it by enacting legislation tailored to the unique (and limited) statutory role of the UEF.

V

The judgment of the Court of Appeal is reversed and the case is remanded to that court with directions to reinstate the decision of the WCAB annulling the penalties for unreasonable delay imposed against the UEF.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.

MOSK, J.—I dissent. The government insurance fund responsible for supplying DuBois with compensation benefits while he was disabled acted with

complete incompetence in handling his claim. Though it stipulated to the award, it failed to pay him, failed to respond to his request for payment, appeared at the hearing regarding payment unable to say whether it had paid him or not, and finally, six months after the award was made, asked for a continuance to check its records to see if it had paid him or not.

A government insurance fund that so injures a worker by such unreasonable delay of the payment of a stipulated workers' compensation award should pay the same penalty to the worker that is assessed against a private workers' compensation insurance company or employer for unreasonable delay. I agree with the majority of the Court of Appeal in this case that the goal of our workers' compensation system to provide prompt support for injured workers, our duty to interpret this statutory scheme liberally with a view to promoting the goal of compensation, and the legislative history of the particular statute at issue support this outcome.

We have observed that the underlying policy of the workers' compensation statutes " 'as well as the recurrent theme of countless appellate decisions on the matter has been one of a pervasive and abiding solicitude for the work[er].' " (*Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 [170 Cal.Rptr. 32, 620 P.2d 618], quoting *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 233 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Our state's body of workers' compensation laws provides for relief from industrial injury and financial support in order to encourage the worker's ultimate return to the work force. (*Moyer* v. *Workmen's Comp. Appeals Bd., supra*, 10 Cal.3d at p. 233.)

The prompt payment of statutory benefits—here, vocational rehabilitation benefits—is crucial to the operation of the statutory compensation plan and its central purpose of prompt treatment of industrial injury and encouraging workers' early return to productive labor. Therefore, since 1945 Labor Code section 5814[1] has provided for a penalty for unreasonable delay in payment.[2]

"Section 5814 is the goad for securing timely payment of compensation of injured working men and women without delay. [Citation.] One of its

---

[1]All statutory references are to the Labor Code unless otherwise indicated.

[2]Section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

principal purposes is to encourage employers or their workers' compensation insurance carriers to make payments of compensation in a reasonable and *timely* fashion to *speed* the recovery and return to work of injured employees as *rapidly* as possible. [Citation.] An equally important purpose of section 5814 is to encourage *timely* payments of compensation to injured working people to *promptly* ameliorate economic hardship because of the interruption of their employment and concomitant loss of income." (*Consani* v. *Workers' Comp. Appeals Bd.* (1991) 227 Cal.App.3d 12, 23 [277 Cal.Rptr. 619], italics added.)

The statutory scheme of workers' compensation is to be "liberally construed by the courts with the purpose of extending . . . benefits for the protection of persons injured in the course of their employment." (§ 3202.) We have frequently applied the rule of liberal construction to all aspects of workers' compensation law. (*Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 626, and cases cited.)

The case law establishes that as to section 5814, providing for penalties for delay in payment of benefits, the rule of liberal construction in favor of the employee is particularly necessary. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200]; *Klee* v. *Workers' Comp. Appeals Bd.* (1989) 211 Cal.App.3d 1519, 1524 [260 Cal.Rptr. 217]; *Pascoe* v. *Workmen's Comp. Appeals Bd.* (1975) 46 Cal.App.3d 146, 157 [120 Cal.Rptr. 199]; see also *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 823, 826 [153 Cal.Rptr. 590, 591 P.2d 1242].)

The majority express the view that the Uninsured Employers Fund (Fund) should be exempt from section 5814. Section 5814 provides for no exemption; the rule of liberal construction in favor of the worker does not permit us to read such an exemption into the statute.

The majority claim that section 3716.2 provides the exemption that is missing from section 5814. The statutory history of the provision persuades me otherwise, as does our duty to interpret any ambiguity in favor of the injured worker.

Until 1971, injured workers of employers who had failed to procure workers' compensation insurance had difficulty obtaining prompt payment of benefits. For this reason the Legislature created the Fund, and obliged the Workers' Compensation Appeals Board (Board) to make awards for such employees, and, if payment was not forthcoming, order the payment of the award to the injured employee out of the Fund of the state treasury. (§§ 3715, 3716.) Soon thereafter we held that the Fund is liable not only for

the underlying compensation award, but also for penalties *imposed on employers* under sections 4554 and 4555. (*Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 176-178 [113 Cal. Rptr 217, 520 P.2d 1033].)

As the majority concede, the Legislature responded to our decision in *Flores* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d 171, in 1976 by adding section 3716.2, which, when enacted, provided in pertinent part that "[n]otwithstanding the precise elements of an award of compensation benefits . . . the . . . Fund [ ] shall pay the claimant only such benefits allowed . . . that would have accrued against an employer properly insured for workers' compensation liability." (Stats. 1976, ch. 1036, § 7, p. 4642.)

Unlike the majority, who view this language as clearly establishing that the Fund was liable only for benefits and not for penalties arising from the employer's failure to pay compensation (maj. opn., *ante*, p. 391), my view is that this enactment left the Legislature's precise intent vague. In fact, unless the reader of the statute knew of the *Flores* decision, the statute on its face relates only to benefits, and says nothing at all about the subject of penalties. Accordingly, it was necessary for the Legislature in 1981 to add the provision that the Fund "shall not be liable for any penalties or for the payment of interest on any awards." (Stats. 1981, ch. 894, § 4, pp. 3409-3410.) But this language must be read in the context of the statute as a whole, which is aimed at limiting the vicarious liability of the Fund for the *misconduct of the employer.* It says nothing at all about the *liability of the Fund for its own misconduct,* that is, unreasonable delay. After all, the misconduct of the Fund had certainly not been an issue in *Flores,* which was the apparent impetus for the enactment of section 3716.2. Thus it is anomalous to seek a rule as to the Fund's liability for penalties in that section.

The majority point to no committee report, letter from a proponent or other direct evidence that the Legislature was concerned with exempting the Fund from penalties for its own misconduct when it enacted section 3716.2. The majority point to circumstantial evidence, as in the right of the employee of an uninsured employer to maintain a civil action as well as a claim for workers' compensation benefits (§§ 3706, 3715), and in the lack of a deadline for the Fund's payment of benefits. The latter is easily disposed of; the penalty is imposed for "unreasonable delay," and not for failing to meet the statutory deadline. (§ 5814.) Thus the exact deadline for payment of benefits is not determinative in the imposition of a penalty, whether the delay is attributable to the Fund or to an employer. As for the availability of a civil action, again I see no way in which this reflects any legislative intent with respect to penalties to be imposed upon the Fund for misconduct in cases in which the employee has chosen to maintain a claim for workers' compensation benefits.

The majority argue that the penalty provision of section 5814 should not apply to the Fund as, unlike a private insurance fund, it has no incentive for delay, and is often slow simply in response to its perpetual shortage of money. The argument is a smokescreen; it has no applicability whatever to the facts of this case. There is no evidence that lack of money was the cause for the delay in the instant case, and, in fact, the Fund offered no explanation or justification for its delay at the hearing before the Board, and ultimately conceded that its delay had been unreasonable. As I demonstrate in detail below, the Fund simply acted with gross incompetence in handling the applicant's claim. In any event, in a case in which the issue of budget shortfall was actually presented, I would find that to the extent that delay is attributable to lack of funds it is not "unreasonable" in the terms of the statute, and should not be penalized. The majority's citation to authority limiting excused delay to medical or legal doubt of entitlement to benefits is inapposite; these cases did not consider the question of the Fund's liability for its own institutional misconduct. (See, e.g., *Kerley* v. *Workmen's Comp. App. Bd.*, *supra*, 4 Cal.3d at p. 230.)

The profit motive may not cause the Fund to delay, but it is clear from the record in this case that some other improper cause of delay is at work and needs to be addressed. There is disturbing evidence in this record that the Fund is operating with chronic, inexcusable delays and is so slow and unresponsive that it has caused workers' compensation attorneys to refuse to take cases in which the Fund will be involved. That there is chaos in the administration of the Fund is demonstrated by the evidence of the representative of the Fund at the hearing on this matter long after the award was stipulated that he still could not say whether the Fund had made any payments to the applicant or not! In fact, counsel for the Fund conceded at oral argument that the Fund did not ultimately determine what it had done with respect to payment for more than a year after the stipulated award.

The Board, the body that originally assessed the penalty against the Fund, evidently found the following chronology of incompetence as striking as I do: "On 12/14/89, a hearing was held . . . . The Applicant, his attorney, and a representative for the Uninsured Employers Fund signed and submitted Stipulations With Request for Award . . . . [¶] The Stipulations With Request for Award were reviewed and approved by Workers' Compensation Judge James M. Bass on 12/14/89. Copies of the Award . . . [were] served by hand on . . . the representative of the Uninsured Employers Fund at the hearing. [¶] On 1/2/90 and 1/24/90, Applicant's Counsel wrote to the Uninsured Employers Fund requesting compliance with the Award . . . . On 2/15/90, the Applicant filed a . . . Petition for Penalty alleging that the Uninsured Employers Fund had not made payment in accordance with the

Award. . . . There was no objection or other response filed by the Uninsured Employers Fund. [¶] On 5/24/90, a hearing was held . . . [before the Board]. The Applicant made an offer of proof that he had received no payments from the Uninsured Employers Fund . . . . The representative of the Uninsured Employers Fund noted for the record that he could not say one way or the other whether the Uninsured Employers Fund had made any payments. The parties were allowed 15 days to submit written arguments regarding the penalty issue. [¶] On 5/31/90, the Applicant submitted his written argument regarding the penalty issue. On 6/6/90, the Uninsured Employers Fund filed a motion requesting that submission of this matter be delayed so it could investigate what payments might have been made to the Applicant. [¶] The motion filed by the Uninsured Employers Fund requesting additional time to investigate what payments it might have made to the Applicant is improper and untimely. More than 5 months elapsed between the time of the Award and the penalty hearing. More than 4 months elapsed between the Applicant's first demand for payment for Award and the penalty hearing. More than 3 months elapsed between the filing of the Applicant's DOR/Petition for Penalty and the penalty hearing. There is no indication in the record, and there was no representation made by the representative of the Uninsured Employers Fund at the trial hearing, that the Uninsured Employers Fund had taken any steps to make payment to the Applicant or to investigate what payments . . . might have been made."

My only hesitation about urging that a penalty should be assessed against the Fund is that the 10 percent penalty for delay may have little effect on such a torpid agency. Certainly the majority opinion will not be helpful. Hercules's method at the Augean stables may be more to the point.

For the foregoing reasons, I would hold that the mandate of section 5814 relating to benefits to the injured worker must apply to aid employees whose payments should come promptly, subject only to the reasonableness of the efforts of the Fund. I would affirm the decision of the Court of Appeal.