[No. A112640. First Dist., Div. Three. Aug. 15, 2006.]

NEW UNITED MOTORS MANUFACTURING, INC., Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and JOHN GALLEGOS, Respondents.

COUNSEL

James E. Bruscino, D'Andre, Peterson, Bobus & Bruscino, for Petitioner.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

William S. Morris for Respondent John Gallegos.

OPINION

**PARRILLI, J.**—New United Motors Manufacturing, Inc. (NUMMI) challenges the Workers' Compensation Appeals Board's (WCAB) refusal to reconsider an order to pay a penalty and attorney fees for delaying payment of workers' compensation benefits to respondent John Gallegos (applicant). The WCAB concluded NUMMI unreasonably delayed providing the benefits, and penalized the company an amount equal to 25 percent of the amount of the benefits delayed. The WCAB further awarded applicant the attorney fees he incurred in enforcing payment of the delayed benefits and penalty.

NUMMI contends the WCAB exceeded its authority because it ordered the penalty based on a misinterpretation of the relevant statute, recently enacted Labor Code section 5814.[1] It further contends no proper basis exists for the WCAB's award of attorney fees under section 5814.5. We agree, and thus vacate the WCAB's order denying reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2001, by a stipulated settlement, applicant was awarded $31,535 in benefits for a work-related injury. Great American Insurance (GAI), a third party administrator (TPA) acting on NUMMI's behalf, made timely payments on the award until September 2002. At that time, GAI transferred responsibility for the case to TPA Gallagher Basset, incorrectly noting in applicant's file that all permanent disability had been paid. Accordingly, payments to applicant ceased.

---

[1] All statutory references herein are to the Labor Code unless otherwise indicated.

Applicant thereafter advised his attorney that payments had ceased, and his attorney, on August 12, 2003, sent a letter to NUMMI requesting a benefit printout regarding applicant's award. The letter did not advise NUMMI of the interruption in applicant's payments. NUMMI provided applicant the benefit printout on September 10, 2003.

On November 12, 2003, applicant's attorney sent a letter to NUMMI requesting an explanation why only $17,490 of applicant's $31,535 award had been paid. Forty-seven days later, on December 28, NUMMI issued two checks to applicant, one in the amount of $13,381.43, representing the amount owed for unpaid benefits, and the other in the amount of $1,304.14, representing a self-imposed 10 percent late-payment penalty. On February 11, 2004, applicant filed a claim for penalty under section 5814.

The matter proceeded to trial February 14, 2005. Applying section 5814, subdivision (a), operative July 2004, the workers' compensation judge (WCJ) found NUMMI had unreasonably delayed payment of applicant's benefits for 47 days—from the date applicant advised the company of the payment interruption to the date the company paid applicant the delayed benefits plus the 10 percent self-imposed penalty. The WCJ thus imposed a 25 percent penalty on NUMMI, less the $1,304.14 NUMMI previously paid, and awarded applicant attorney fees. In so ruling, the WCJ rejected NUMMI's argument that, under subdivision (b) of the new statute, NUMMI's 10 percent self-imposed penalty—paid within 90 days of the date the company discovered the delay and before applicant claimed a penalty under subdivision (a)— precluded the additional penalty.

On October 11, 2005, NUMMI filed a request for reconsideration, which the WCAB denied on December 5 in accordance with the WCJ's recommendation. NUMMI's timely petition for writ of review followed. We thereafter granted the petition and requested supplemental briefing from the parties, which they provided.

## DISCUSSION

### A. *Standard of Review*

This case requires us to interpret and apply sections 5814 and 5814.5, enacted in 2004 by Senate Bill No. 899 (2003–2004 Reg. Sess.). Reviewing courts interpret statutes de novo, although the WCAB's interpretation is entitled to great weight unless clearly erroneous. (*Green v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 1426, 1435 [26 Cal.Rptr.3d 527].) While reviewing courts need not accept factual findings that are erroneous, unreasonable, illogical, improbable, or inequitable, they must affirm where those

findings are supported by substantial evidence when viewed in light of the entire record and the statutory scheme. (*Ibid.*)

B. *Labor Code Section 5814*

█ In interpreting a statute, courts generally look first to the plain or ordinary meaning of the statute's language to determine the Legislature's intent. (*Green v. Workers' Comp. Appeals Bd., supra,* 127 Cal.App.4th at p. 1435, citing *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) "Every word and clause is given effect so that no part or provision is useless, deprived of meaning, or contradictory." (*Green, supra,* at p. 1435.) Moreover, if "more than one interpretation is reasonable, the language is interpreted consistent with the purpose of the statute and the statutory framework as a whole, using rules of construction or legislative history in determining legislative intent." (*Ibid.*)

Section 5814, provides in relevant part:

"(a) When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the amount of the payment unreasonably delayed or refused shall be increased up to 25 percent or up to ten thousand dollars ($10,000), whichever is less. In any proceeding under this section, the appeals board shall use its discretion to accomplish a fair balance and substantial justice between the parties.

"(b) If a potential violation of this section is discovered by the employer prior to an employee claiming a penalty under this section, the employer, within 90 days of the date of the discovery, may pay a self-imposed penalty in the amount of 10 percent of the amount of the payment unreasonably delayed or refused, along with the amount of the payment delayed or refused. This self-imposed penalty shall be in lieu of the penalty in subdivision (a)."

The WCAB imposed a 25 percent penalty on NUMMI under subdivision (a) of the statute, adopting the WCJ's finding that NUMMI had unreasonably delayed payment of applicant's benefits for 47 days—from November 12, 2003, when applicant's letter provided notice of the delay until December 28 when the company paid the delayed benefits plus a 10 percent self-imposed penalty. In so ruling, the WCAB rejected applicant's claim that NUMMI unreasonably delayed payment for 15 months—from September 2002 when NUMMI's TPA erroneously stopped payments until December 28, 2003, when NUMMI paid the delayed benefits and self-imposed penalty: "It was not the fifteen (15) month delay that I found to be unreasonable. It was the six week (47 day) delay in payment to applicant, after [NUMMI] had notice of the delay, that I found to be unreasonable."

The WCAB declined to apply section 5814, subdivision (b) to excuse the 25 percent penalty, despite NUMMI's payment of a 10 percent self-imposed penalty before applicant claimed any penalty and less than 90 days after the company discovered the delay. Adopting the WCJ's reasoning, it concluded subdivision (b) was inapplicable because applicant, not NUMMI, first discovered the "potential violation" of section 5814, after examining a benefit printout in September 2003.

■ We reject the WCAB's conclusion. Section 5814, subdivision (b), in plain and unambiguous terms, permits employers to pay a 10 percent self-imposed penalty "in lieu of the penalty in subdivision (a)" if (1) "a potential violation of [section 5814] is discovered by the employer prior to an employee claiming a penalty under this section," and (2) the penalty is paid "within 90 days of the date of the [employer's] discovery." By its terms, the statute thus does not limit its application to the event where the employer discovers a potential violation before the employee.[2] Rather, the statute limits its application to the event where, as here, the employer discovers a potential violation *before the employee claims a penalty.* Had the Legislature intended another limitation to apply, it could have drafted it into the statute. It did not.

We also reject the WCAB's suggestion that proper interpretation of the statute's language "is discovered" requires that its application be limited to the event where the employer learns of the potential violation through its own investigation rather than through an employee's or third person's investigation. As respondents point out, such interpretation would encourage employers to carefully monitor administration of workers' compensation benefits to promptly discover and cure delays.

■ While that certainly is a laudable policy objective, we find nothing in the case law or section 5814's legislative history to support it. Moreover, the legal definition of the term "discovery" is "[t]he act or process of finding or learning something that was previously unknown." (Black's Law Dict. (1996 pocket ed.) p. 193.) The definition thus focuses on the fact that the discoverer becomes aware of new information. It does not focus on, or even refer to, how or through what source the discoverer becomes aware of it. (Accord, *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 951 [112 Cal.Rptr.2d 329] [in the context of the limitations period for common law fraud, defining the term "discovery" as a person's awareness of facts sufficient to make a reasonable prudent person suspicious of fraud].) We must conclude that, had the Legislature intended to vary common usage of the term

---

[2] As *NUMMI* notes, employees often will discover potential violations before their employers. While the employee likely manages only one workers' compensation check per month—the one he expects to receive from the employer—the employer or its administrator may manage hundreds or even thousands of them.

"discovery," it would have made its intention manifest. (*Green v. Workers' Comp. Appeals Bd., supra,* 127 Cal.App.4th at p. 1435 [courts generally look first to the plain or ordinary meaning of the statute's language to determine the Legislature's intent], citing *DuBois v. Workers' Comp. Appeals Bd., supra,* 5 Cal.4th at pp. 387–388.)

In summary, the WCAB reads into section 5814, subdivision (b) limitations not provided for by the statute's plain and unambiguous language. The law forbids that: "When the statutory language is clear and unambiguous, there is no room for interpretation and the WCAB must simply enforce the statute according to its plain terms." (*Abney v. Workers' Comp. Appeals Bd.* (2004) 69 Cal.Comp.Cases 1552, 1556–1557 [en banc] (*Abney*); see also *DuBois v. Workers' Comp. Appeals Bd., supra,* 5 Cal.4th at pp. 387–388.)

In reaching our conclusion, we acknowledge applicant's concern that rejecting the WCAB's interpretation could encourage employers to improperly delay providing employees wage-replacement benefits for 90 days, at a cost increase of just 10 percent. It appears the WCJ may have had that concern in mind in ruling as she did.

But while this concern may be well-founded, we still cannot square the WCAB's interpretation with section 5814's statutory language for at least two reasons. First, the Legislature itself drafted the 90-day safe harbor into the statute. If employers' dilatory tactics are a concern under that safe harbor, it is for the Legislature to amend or delete it. Second, the Legislature included provisions elsewhere in the new law to protect against employers' dilatory tactics, and in turn to discourage abuse of section 5814's safe harbor. Section 5814.6, for example, provides that an employer or insurer that "knowingly violates Section 5814 with a frequency that indicates a general business practice is liable for administrative penalties not to exceed . . . $400,000 . . . ." (*Id.,* subd. (a).)[3]

We found nothing in respondents' briefing that requires the alternative interpretation. Rather, their primary argument appears to be to "den[y] that the imposition [of the 25 percent penalty] was solely due to a 47-day delay in the payment of the permanent disability." They suggest instead that NUMMI's "termination of benefits . . . appears to have been a deliberate and calculated act" that occurred in September 2002 when TPA Gallagher Basset took the case from TPA GAI. They also suggest a duty to investigate applicant's file arose when TPA Gallagher Basset took the case

---

[3] In any event, we do not believe this result is likely to encourage employers to improperly delay payments for 90 days because the employer will lose the benefit provided under section 5814, subdivision (b) if the employee claims a penalty under the statute within the 90-day period. Employers are not likely to take that risk.

in September 2002 or, at a minimum, when his attorney requested a benefit printout in August 2003. Because NUMMI failed that duty, they reason, a decision to vacate the WCAB's order would reward NUMMI's "dilatory behavior."

Respondents' argument is unsupported by the WCJ's and WCAB's findings below. In particular, the WCJ found no "deliberate and calculated act" to deprive applicant of benefits, nor any duty to investigate his file in September 2002 or August 2003. Rather, the WCJ found that NUMMI first received notice of an interruption in applicant's benefits on November 12, 2003, and then unreasonably delayed payment for 47 days, until December 28. Respondents did not challenge those factual findings below, so we do not permit them to do so here.[4] (*Griffith v. Workers' Comp. Appeals Bd.*, *supra*, 209 Cal.App.3d at p. 1265 [257 Cal.Rptr. 813] [issue not raised at trial level waived on appeal].)

## C. *Labor Code Section 5814.5*

NUMMI challenges the WCAB's award of attorney fees to applicant under section 5814.5. That statute provides in relevant part:"When the payment of compensation has been unreasonably delayed or refused subsequent to the issuance of an award by an employer . . . , the appeals board shall, in addition to increasing the order, decision, or award pursuant to Section 5814, award reasonable attorneys' fees incurred in enforcing the payment of compensation awarded."

Here, the record does not reveal the amount of attorney fees, if any, applicant incurred in enforcing payment of the unreasonably delayed benefits. It reveals only that, after receiving notice of the delayed benefits from applicant's attorney, NUMMI paid the benefits and a 10 percent penalty on its own initiative and in accordance with section 5814, subdivision (b). Given the undeveloped state of the record, we are unwilling to decide here whether the WCAB's award of attorney fees was proper. Accordingly, we remand to the WCAB to reconsider the issue after further proceedings.

## D. *Applicant's Request for Attorney Fees*

Applicant requests an award of the attorney fees he incurred in responding to this petition under section 5801 on the ground the petition "has no reasonable basis." For the reasons stated above, we disagree. Accordingly, we deny his request.

---

[4] We also decline to address applicant's argument, raised here for the first time, that the WCAB improperly applied the new version of section 5814, operative July 2004, rather than the earlier version. (*Griffith v. Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, 1265; see also *Abney, supra*, 69 Cal.Comp.Cases at p. 1560.)

## DISPOSITION

The order denying reconsideration is vacated, and the matter is returned to the WCAB with directions to grant reconsideration, to reverse its order imposing a 25 percent penalty against NUMMI, and to reconsider its award of attorney fees after further proceedings.

McGuiness, P. J., and Pollak, J., concurred.

A petition for a rehearing was denied Septemeber 6, 2006, and the petition of respondent John Gallegos for review by the Supreme Court was denied November 15, 2006, S146740.